IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

| | | |
|---|---|---|
| _____ ) | | |
| IN RE: ) | **Case No. 12-28809-TJC** | |
| ) | | |
| MONICA PATRICIA MCGINLEY ) | **Chapter 13** | |
| ) | | |
| Debtor(s) ) | | |
| ) | | |
| Plaintiff(s) ) | **Adversary No. 12-00745** | |
| MONICA PATRICIA MCGINLEY ) | | |
| ) | | |
| vs. ) | COMPLAINT FOR: DECLARATORY RELIEF | |
| ) | INJUNCTIVE RELIEF; VIOLATIONS OF | |
| Defendant(s) ) | FEDERAL AND STATE STATUES, | |
| DEUTSCHE BANK NATIONAL ) | DETERMINATION OF VALIDITY | |
| TRUST COMPANY AS TRUSTEE ) | PRIORITY OR EXTENT OF LEIN AND | |
| FOR HARBORVIEW 2006-BU1 ) | OTHER CAUSES OF ACTION | |
| C/O EMC Mortgage Corporation ) | | |
| 345 Vision Drive ) | | |
| Columbus, Ohio 43219 ) | | |
| ) | **DEMAND FOR JURY TRIAL** | |
| And ) | | |
| CENTRAL MORTGAGE ) | | |
| COMPANY D/BA CENTRAL ) | | |
| MORTGAGE LOAN SERVICING ) | | |
| COMPANY ) | | |
| 801 John Barrow Road ) | | |
| Suite 1 ) | | |
| Little Rock, Arkansas 72205 ) | | |
| ) | | |
| And ) | | |
| PNC MORTGAGE BANK ) | | |
| 3232 Newmark Drive ) | | |
| Miamisburg, Ohio 45342 ) | | |
| ) | | |
| _____ ) | | |

### AMENDED COMPLAINT

COMES NOW PLAINTIFF MONICA PATRICIA MCGINLEY who alleges

damages and seeks equitable relief against the Defendants, and each of them as follows:

## JURISDICTION & VENUE

1.      Jurisdiction is conferred on this Court pursuant to die provisions of Section 1334 of Title 28 of the United Stated Code in that this proceeding arises in and is related to title above-captioned Chapter 13 case under Title 11 and concerns property of the Debtor in this case. This Court has both personal and subject matter jurisdiction to hear this case pursuant to Section 1334 Code. This Court has supplemental jurisdiction to hear all state law claims pursuant to Section 1367 of Title 28 of the United States Code. This matter is primarily a core proceeding and therefore the Bankruptcy Court has jurisdiction to enter a final order. Venue lies in this District pursuant to Section 1391 (b) of Title 28 of the United States Code.

## PARTIES

2.      At all times relevant herein, Plaintiff Monica Patricia McGinley (hereinafter "Plaintiff") is the owner of a property in Montgomery County located at 8933 Treebranch Terrace, Germantown, Maryland 20874, and was the borrower on the Mortgage Note at issue pertaining to that property in this Complaint.

3.      At all times relevant herein, Plaintiff Monica Patricia McGinley is the owner of a property in Virginia located at 36 Thomas Court, Montross, Virginia, 22250, and was the borrower on the Mortgage Note at issue pertaining to that property in this Complaint.

4.      Defendant DEUTSCHE BANK NATIONAL TRUST COMPANY (hereinafter "Deutsche Bank") TRUSTEE FOR HARBORVIEW 2006-BU1 is and at all times mentioned an entity of unknown incorporation, not licensed to transact business in Maryland, California, New York or Delaware, with offices located at 300 South Grand Avenue 41st Floor, Los Angeles, CA 90071.

5.      Defendant, CENTRAL MORTGAGE COMPANY D/B/A CENTRAL

2

MORTGAGE LOAN SERVICING COMPANY (CMC) is and at all times mentioned herein a Corporation organized and existing under the laws of the state of Arkansas, with principal offices located at 801 John Barrow Road, Suite 1, Little Rock, Arkansas, 72205, and an agent for Deutsche Bank who now claims to be the new holder of Plaintiff's Mortgage Note through assignment from Deutsche Bank.

6.      Defendant, PNC MORTGAE BANK is and at all times mentioned herein a Corporation organized and existing under the laws of Ohio  with principal offices located at 3232 Newmark Drive, Miamisburg, Ohio 45342.

## FACTS COMMON TO ALL CAUSES OF ACTIONS

7.      This action also concerns Defendants' fraudulent omissions, their unlawful, fraudulent, and unfair business acts or practices. Defendants engaged in a campaign of deceptive conduct and concealment to defraud Plaintiff in order to maximize Defendants' profits, even as Defendants knew their conduct would cause Plaintiff to lose her properties through illegal foreclosure actions.

8.      This instant action arises out of residential mortgage loan transactions in which Defendants failed to disclose important and material information in a clear and conspicuous manner to Plaintiff, in writing, as required by law.

## COMMON ALLEGATIONS
### [As to Defendants Deutsche Bank and CMC]

9.      CMC is a corporation in the United States that engages in the business and practice of mortgage loan servicing. It is required to register and obtain a special loan servicer license in many states, including the state of Maryland. It has operated in the states of Maryland and New Hampshire illegally for years without a loan servicing license until on or about July of 2011.

10.     CMC was prosecuted by the Attorney General of New Hampshire for failing to obtain a "loan servicer license" and for illegally collecting mortgage payments from 393 New Hampshire residents. Ultimately CMC in May of 212, entered into a consent agreement with the Attorney General of New Hampshire admitting its guilt and refunding illegal money collected from New Hampshire residents.

11.     In or about July 2005 Plaintiff Monica McGinley refinanced her property known as 18933 Treebranch Terrace, Germantown, Maryland 20874. Plaintiff paid $242,000 for the property and made a down payment on the property of $60,000 (sixty thousand dollars). Her mortgage lender was BankUnited, F.S.B. She executed in 2005 a note and deed of trust recorded in the land records of Montgomery County which is the subject of this complaint.

12.     BankUnited, F.S.B. is not a party to these proceedings.

13.     CMC was Plaintiff's loan servicer for BankUnited, F.S.B.

14.     However, in 2009, Plaintiff's lender BankUnited, F.S.B. entered into Bankruptcy and the United States Government took over the bank and placed it under receivership. All BankUnited, F.S.B. residential home mortgages were at risk and uncertain.

15.     From 2010 until the present, the Plaintiff requested information from CMC who at that time was Plaintiff's mortgage loan servicer for lender and note holder BankUnited, F.S.B. concerning the identification and name of her new note holder and lender, a question which CMC refused to answer until February 17, 2012, when Defendant CMC filed a Foreclosure Action against Plaintiff on behalf of Deutsche Bank in the Circuit Court of Montgomery County, Maryland.

16.     Plaintiff first learned of Defendant Deutsche Bank when it made claims in her 2012 foreclosure action that it was the Trustee for HARBORVIEW 2001-BU1 an entity that alleges and now claims it owns Plaintiff's note, deed of trust and is her allegedly her new "Lender" and as such allegedly appointed Deutsche Bank as Trustee, who in turn has appointed CMC as the alleged Note Holder authorized to file a foreclosure action against Plaintiff.

17.     CMC through Deutsche Bank's assignment hereinafter claims to be Plaintiff's successor "Lender", as defined in Plaintiff's Mortgage Note and Deed of Trust. Such a claim by Defendants if true would allow them to be entitled to the benefits set forth therein including the payments required by the Plaintiff, the right to foreclose on the property in case of default therein, and as such file a foreclosure action in Maryland against Plaintiff  to reclaim her property.

18.     To date Plaintiff remains in possession of her residence.

19.     In the past, Plaintiff has repeatedly demanded written documentation and/or written proof that Defendants Deutsche Bank and CMC are the actual successors "Lender" as set forth in her Mortgage Note and Deed of Trust.

20.     The Defendants Deutsche Bank and CMC failed and refused to provide any written documentation or proof that they are the actual successor "Lender" under the Note and Deed of Trust.

21.     Plaintiff denies that either Defendants Deutsche Bank or CMC is her new successor "Lender" as set forth in her Note and Deed of Trust.

22.     As will be shown in detail below, the claimed right by Defendants Deutsche Bank and CMC that they are allegedly entitled to demand and receive mortgage

payments due under Plaintiff's Note and Deed of Trust as recorded in the Montgomery County, Maryland Land Records or to foreclose on her Treebranch property is a false claim. Defendants falsely claimed a default therein, and then illegally pursued an unlawful foreclosure action against Plaintiff. All such claims by Defendants of ownership of her Note and Deed of Trust are disputed and the subject of a controversy as between the Plaintiff and the Defendants Deutsche Bank and CMC requires this Court to determine the claims and rights of the parties.

23.    The Defendants Deutsche Bank and CMC have caused demands for payments purportedly due under Plaintiff's Note and Deed of Trust as it pertains to her Treebranch Maryland property to be directed by the Plaintiff to Defendant Central Mortgage Company D/B/A Central Mortgage Loan Servicing Company.

24.    Prior to this demand, Plaintiff has made payments in excess of approximately $72,000 relative to the 2005 Note and deed of trust in question.

25.    Defendants Deutsche Bank and CMC are aware and have knowledge of extensive payments that have been made by Plaintiff.

26.    The Plaintiff has no known contractual relationship of any kind with Defendants Deutsche Bank and CMC relative to their new and recent claims as holder of the Note and Deed of Trust as it pertains to Plaintiff's Treebranch Maryland property.

27.    Plaintiff denies any contractual relationship or privity of contract exists as between the Plaintiff and Defendants Deutsche Bank and CMC, relative to the Note and deed of trust pertaining to the Treebranch Maryland property.

28.    There is no record, note, or deed recorded with the Montgomery County Recorder's office that documents or supports Defendants Deutsche Bank and CMC's

claims that they are the new and current "lender" identified in Plaintiff's note and deed of trust pertaining to the Treebranch Maryland property.

30.     There is no known writing of any kind, recorded or unrecorded, which establishes that Plaintiff's 2005 Note and deed of trust that is the subject of this complaint was ever endorsed, transferred or sold to any third party, including and specifically to Defendants Deutsche Bank and CMC.

31.     There is no recorded written instrument that serves to document any assignment of Plaintiff's 2005 note and deed of trust that was owned by BankUnited, F.S.B. going to Harborview or to any third party, including but not limited to Deutsche Bank, CMC or Harborview.

32.     Plaintiff has not executed any note or deed of trust of any kind relative to the property in question in favor of Defendants Deutsche Bank and CMC or to Harborview.

33.     Plaintiff's 2005 Mortgage Note, as executed is subject to the requirements of the Maryland Commercial Code.

34.     The Maryland Commercial Code requires the Defendants to tender the original note and upon request by the Plaintiff. Plaintiff made repeated requests for the original note and has not received such. Several documents purporting to be the original note produced by Defendants are fraudulent, and they have an inkjet signature of the Plaintiff, which she disputes as being her signature.

35.     If Defendants Deutsche Bank and CMC are actually the successors "Lender" identified in Plaintiff's note and deed of trust they would be required, pursuant to the documents filed by the Defendant Deutsche Bank with the Federal Securities and

Exchange Commission, to be in possession of the actual Note, duly indorsed in favor of Harborview and/or Deutsche Bank by all predecessors in interest.

36.     If  the Defendants Deutsche Bank and CMC are actually the successor "Lender" identified in Plaintiff's note and deed of trust they would be required to have actual physical possession of the original Note, together with written assignments and or transfers pursuant to the requirements of the Maryland Commercial Code which is applicable hereto.

37.      Plaintiff is informed, believes and on said information and belief asserts that Defendants have not obtained her mortgage note and deed of trust for her Treebranch property in any manner whatsoever.

38.     Pursuant to the applicable provisions of the Maryland Commercial Code each and every transfer of Plaintiff's note and deed of trust had to be memorialized by way of a contemporaneous writing and endorsement, which writing or endorsement must be presented to the Plaintiff upon demand.

39.     The Plaintiff has caused demands to be made on the Defendants, and each of them, for the documents requested in Paragraph 38 above.

40.     The Defendants Deutsche Bank and CMC, and each of them have failed and refused to provide the documentation requested in Paragraph 39 above.

41.     Pursuant to Federal regulations,  Defendants were also required to make certain filings with the Federal Securities and Exchange Commission and they should be made to produce documentation of the Trust that purports to hold Plaintiff's Note and Deed of Trust.

42.     Pursuant to the Maryland Commercial Code each and every "transfer" of

the Note pertaining to Plaintiff's Treebranch property must be fully documented.

43.    Pursuant to the provisions of the Maryland Commercial Code, the Plaintiff is entitled to request that a putative holder of her Treebranch note to present the note and documentation of all assignments, transfers, and sales.

44.    The Plaintiff has requested Deutsche Bank and CMC to provide the documentation required under the Maryland Commercial Code, and Deutsche Bank and CMC have refused to provide any documentation.

45.    Plaintiff is informed, believes, and on said information and belief asserts that none of the Defendants Deutsche Bank and CMC are in possession of her original 2005 Mortgage Note as it pertains to her Treebranch property and they are not in possession of the endorsements required to establish any ownership or beneficial interest in said instruments as required under the Maryland Commercial Code, and applicable federal regulations.

46.    On February 17, 2012, the Defendants Deutsche Bank and CMC illegally caused to be filed a Foreclosure Action with the intention to initiate a sale of Plaintiff's Treebranch property.

47.    Defendants made no attempt to appoint new Substitute Trustees until September 13, 2011, which was _after_, the alleged Notice of Default was allegedly sent out by the new Substitute Trustees to Plaintiff.

48.    However Plaintiff denies ever receiving from Defendants Deutsche Bank and CMC, the alleged Notice of Default. She learned of the notice from the Maryland DLLR, which she disputed with DLLR.

49.    Plaintiff disputes that Defendants or any alleged Substitute Trustees

appointed by Defendants had any authority to harass her, send her notices about any alleged payments, defaults or initiate any foreclosure action against her.

50.   On October 17, 2012, the Defendants attempted to conduct a Foreclosure Sale as to her property, at which time this Bankruptcy Proceeding was filed.

51.   Plaintiff maintains that the Defendants Deutsche and CMC are not the true successors in interest to the October 31, 2005, note and or deed of trust executed by and between the Plaintiff and BankUnited, F.S,B. coupled with a lack of notice of default, the lack and failure of production of the original Note, any foreclosure action or sale in this matter is illegal and has no legal effect whatsoever against Plaintiff.

52.   Plaintiff maintains that the Defendants Deutsche Bank and CMC are not a successor, purchaser or assign to BankUnited, F.S.B and therefore have no right to seek and collect moneys from the Plaintiff, no right to conduct the purported foreclosure and sale against the Plaintiff.

53.   The Plaintiff maintains that the Defendants Deutsche Bank and CMC, and each of them, have no right title or interest in the property, and in light of these enumerated facts, they give rise to a real and legitimate controversy as between the parties that require resolution by this court regarding Plaintiff's request for declaratory relief as follows:

## FIRST CAUSE OF ACTION

**(Declaratory and Injunctive Relief Against Defendants Deutsche Bank and CMC )**

54.   Plaintiff hereby incorporate by reference all allegations made in paragraphs 1-53 as if fully plead herein.

55.   An actual controversy has arisen and now exists between the Plaintiff and

Defendants Deutsche Bank and CMC concerning their respective rights and duties with respect to the Plaintiff's property and the related note and deed of trust pertaining to her Treebranch property as follows:

56.     Plaintiff maintains that the Defendants Deutsche Bank and CMC are not the successors, purchasers, assigns or new Note Holder to BankUnited, F.S.B.'s 2005 Note and Deed of Trust identified in paragraphs 11-53 above.

57.     Defendants Deutsche Bank  and CMC maintain that they are the successor, purchasers, assigns to Plaintiff's Note and Deed of Trust identified in paragraphs 11-53.

58.     Plaintiff maintains that under Maryland Commercial Code and under the Plaintiff's Servicing agreement prior to this dispute, the Defendants were required upon the request of Plaintiff to document their claim of ownership interest, including documentation of all prior transfers, sales or assignments of the Note which is secured by the Real Property, as is the Note identified in paragraphs 11-53 above.

59.     Defendants Deutsche Bank and CMC maintain that they are not required to document ownership or rights under the note and deed of trust identified in paragraphs 11-53 and further maintain that self serving statements by or on behalf of the Defendants are legally sufficient to establish the existence of an ownership right , as well as the right to act as a putative owner of the note and deed of trust identified in paragraphs 11-53 above.

60.     Defendants Deutsche Bank and CMC contend they were and are contractually authorized to make the demands for payment, and were contractually entitled to receive all payments demanded and received.

61.     Plaintiff did not receive the "Notice of Default" by or on behalf of the

Defendants claiming a right to institute a foreclosure action of the property in the event that the demand for additional payments was not made. The Plaintiff does not believe that Deutsche Bank who is a complete stranger to the Plaintiff lacking any privity to the contract with the Plaintiff had any legal right to appoint CMC as the new Note Holder in order to institute and go forward with a foreclosure action against Plaintiff's property in the absence of a documented written right to do so.

62.    Defendants Deutsche Bank and CMC contend that they are entitled to file a foreclosure action against Plaintiff and go forward with a judicial sale against her relative to their claim that she defaulted under the Note in Paragraph 17 above.

63.    Even if Defendant Deutsche is the actual successor to the Note, it failed to serve the Plaintiff with the Notice of Default well before it had CMC initiate foreclosure action, CMC was also required to engage in loss mitigation under both Fannie Mae and Freddie Mac's mandatory requirements and under Maryland statues, which it failed to comply with. CMC was also required to respond to the numerous demands by Plaintiff to identify to her the name of the new Note Holder and to produce documents substantiating who was her new Note Holder, which violated the parties servicing agreement. Plaintiff further contends that Defendants Notice of Default was invalid, without legal effect, and any subsequent foreclosure action was void.

64.    Defendants contend they were not required to comply with Fannie Mae, Freddie Mac and federal and Maryland Statutory Requirements prior to initiating-foreclosure activities and the foreclosure sale

65.    Plaintiff contends that the Defendants Deutsche Bank and CMC are not holders of the Plaintiff's Note and Deed of Trust and such has no right to conduct a

"Trustee Sale".

66.     Defendants contend that they were lawfully empowered to initiate and file a foreclosure action and to conduct a "Trustee Sale".

67.     Alternatively, in the unlikely event that the Defendant Deutsche Bank and CMC were empowered to engage in pre-petition foreclosure activities, a foreclosure action and sale which were all predicated upon the filing of a notice of default by Substitute trustees who were not appointed until after they engaged in foreclosure activities makes any foreclosure actions and proceedings void.

68.     Defendant CMC contends it has a right to pursue an unlawful foreclosure action as against the Plaintiff.

69.     The Plaintiff claims the right to restitution over all payments demanded and received by the Defendants.

70.     Plaintiff alleges that neither Deutsche Bank, CMC or the Harborview 200-BU1 Trust have a secured or unsecured legal, equitable, or pecuniary interest in the lien evidenced by the Deed of Trust and that its purported assignment or substitution has no value since the Deed of Trust is wholly unsecured.

71.     Plaintiff further alleges that UnitedBank, F.S.B. has a secured legal, equitable and pecuniary interest in the lien evidenced by the Deed of Trust.

72.     It was only on February 17, 2012, when Defendants Deutsche Bank and CMC filed a Foreclosure Action in the Circuit Court of Montgomery County did Defendants for the very first time identify that they allegedly had a secured enforceable interest in and perfected lien against, Plaintiff's Note, Deed of Trust and Property. All relevant times prior to the filing of the Defendants Foreclosure Action in the Circuit

Court of Maryland Defendants never identified themselves as ever being the holder, owner and secured creditor of Plaintiff's mortgage note and deed of trust.

73.    UnitedBank, F.S.B. is the only known secured creditor and holder of Plaintiff's mortgage note and deed of trust and it has not yet made any claim under the Note, Mortgage, and Deed of trust, but may do so at anytime or someone else could come forward with the claim that they are the actual holder of the Note and Deed of Trust.

74.    Thus the competing allegations made by the Plaintiff above establishes that a real and actual controversy exists as to the respective rights of the parties to this matter, including ownership of the Note, Deed of trust and the competing rights of the putative creditors.

75.    Accordingly, Plaintiff requests that the Court make a finding and issue appropriate orders stating that Deutshce Bank and Central Mortgage have no right or interest in Plaintiff's Note, Deed of Trust to the property which they claim authorizes them to collect Plaintiff's mortgage payments or enforce the terms of the Note or Deed of Trust in any manner whatsoever but that these rights and interest belong to BankUnited, F.S.B.

76.    Plaintiff will suffer prejudice if the Court does not determine the rights and obligations of the parties because: (1) Plaintiff will be denied the opportunity to identify and document her true and correct creditor /lender and negotiate with them (2) she will be denied the right to conduct discovery and have the claims of Deutsche and CMC verified by a custodian of records who has personal knowledge of the loan and all transactions related to it; (3) she will be denied the opportunity to discover the true amount she still owes minus any illegal costs, fees and charges and (4) she will be

stripped of her proprietary interest in the property by an entity with no standing to undertake said action.

77.     Due to the actual case and controversy regarding competing claims and allegations, it is necessary that the Court declare the actual rights and obligations of the parties and make a determination as to whether the claims by any right title or interest in Plaintiff's Property to the exclusion of the that exists in BankUnited, F.S.B. or the actual owner of the Note and Deed of Trust that is still unknown.

**PRAYER FOR RELIEF**

78.     WHEREFORE, Plaintiff prays for judgment against DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE FOR HARBORVIEW 2006-BU1 AND CENTRAL MORTGAGE COMPANY D/B/A CENTRAL MORTGAGE LOAN SERVIVING COMPANY relative to the Cause of Action for Declaratory Relief the Plaintiff seeks a Declaration that:

a.     Defendants Deutsche Bank and CMC are not the present Holders of the Note and Deed of Trust identified above in paragraphs 11-53 above.

b.     Defendants Deutsche Bank and CMC are not the successors or assigns of BankUnited F.S.B. relative to the Note identified above in paragraphs 11-53 above.

c.     Defendants Deutsche Bank and CMC have no beneficial interest in the Note identified above in paragraphs 11-53 above.

d.     Defendants Deutsche Bank and CMC are not the present successors, assigns, or Lenders named in the Note identified in paragraphs 11-53 above.

e.     Defendants Deutsche Bank and CMC have no rights under the Note identified above at paragraphs 11-53 above.

f.      Defendants Deutsche Bank and CMC together with all agents and assigns, be permanently enjoined from asserting any right, title, or interest in the Note identified at paragraphs 11-53 above.

g.      That Defendants Deutsche Bank and CMC be permanently enjoined from filing or recording any document relative to the Plaintiff's property.

h.      That Defendants Deutsche Bank and CMC had no right to initiate or conduct pre-foreclosure activities and actions of the said property because they did not own the note in question, or because the Notice of Default was invalid, and thus any foreclosure sale proceedings is void.

i.      That Defendants Deutsche Bank and CMC had no right to conduct a "Trustee Sale" of the property because they either did not own and/or was holder of the note in question, or because the Notice of Default was invalid, and thus any sale would be void.

j.      That Plaintiff does not owe Defendants Deutsche Bank and CMC any amount under the Note identified at paragraphs 11-53.

k.       That Defendants Deutsche Bank and CMC be ordered to provide an accounting and refund to Plaintiff for any amount she has paid and was received by the Defendants illegally for any reason relative to the Note identified at Paragraph 17 above.

l.      That Defendants Deutsche Bank and CMC named herein be ordered to comply with the orders of this Court to the extent they are the agents, and/or representatives of the Defendants Deutsche Bank and CMC.

m.      For costs of suit herein incurred and

n.      For such other and further relief that this Court deems proper and just.

## SECOND CAUSE OF ACTION

### (VIOLATIONS OF MARYLAND LOSS MITIGATION STATUES
### AND FANNIE MAE AND FREDDIE MAC'S MITIGATION REQUIREMENTS)

### [Defendants Deutsche Bank and CMC]

79.     Plaintiff hereby incorporates the allegations plead in paragraphs 1-78 as if fully plead herein.

80.     CMC was Plaintiff's original mortgage servicer for the only known Note

and Deed of Trust holder BankUnited, F.S.B. as to the Plaintiff's Treebranch Property from 2006. Plaintiff's mortgage loan is a Fannie Mae/Freddie Mac loan.

81.     Fannie Mae/Freddie Mac uses mandatory language and have clear mission statements that demand that the mortgagee pursue alternatives to foreclosure.

82.     Maryland also enacted loss mitigation laws requiring that lenders are mandated prior to filing any foreclosure action to engage in loss mitigation procedures for both consumers' home residence and residences in which they do not reside.

83.     Since Deutsche Bank and CMC have alleged they are the true "Lenders" and Note Holders, although Plaintiff disputes such, they were required under both Maryland law and Fannie Mae and Freddie Mac's mortgage requirements to engage in loss mitigation efforts with the Plaintiff prior to initiating and filing any foreclosure action or sale.

84.     Defendants Deutsche Bank and CMC failed and refused to engage in any loss mitigation efforts and did in fact violate both Fannie Mae and Freddie Mac's loss mitigation requirements and Maryland Code Real Prop. §7-105.1 (d)(2)(viii) requiring the Defendants to engage in good faith loss mitigation efforts, including a face to face

interview with Plaintiff on her mortgage loan regardless if the property is her primary residence.

85.     Defendants Deutsche Bank and CMC violated both Maryland loss litigation laws and Fannie Mae and Freddie Mac's loss mitigation requirements prior to filing any foreclosure action in state court.

86.     Plaintiff contacted CMC several times to attempt to negotiate loan modification and to have CMC identify the new owner of Plaintiff's Note and Deed of Trust. All attempts to discuss loan modification with CMC have been futile.

87.     Defendants Deutsche Bank and CMC's violation of the laws if they are the true new "lender" and Note Holder pursuant to Maryland law raises viable defenses to a Maryland foreclosure proceeding.

88.     As a direct and proximate result of Defendant CMC's violations of Maryland Statues and Regulations and Fannie Mae and Freddie Mac's requirements requiring lenders to engage in loss mitigation proceedings with all home owners before filing and/or instituting any foreclosure actions, Plaintiff has suffered actual pecuniary damages, including but not limited to statutory damages, civil liability and attorney fees in an amount to be proven at trial.

WHEREFORE, Plaintiff prays that this Court enter judgment in her favor and against Deutsche and CMC jointly and severally for:

a.     Actual damages of $304,000 (Three Hundred and Four Thousand Damages);

b.     Statutory Damages;

c.     Attorney fees, litigation expenses and costs of suit; and

d.       such other relief as this Court deems proper and just.

## THIRD CAUSE OF ACTION

## (VIOLATION OF 12 U.S.C. §2605(RESPA)

## [As Against Defendant CMC]

89.       Plaintiff hereby incorporates by reference the allegations as plead in paragraphs 1 through 88 as if fully plead herein.

90.       The Plaintiff's Treebranch property Maryland Mortgage loan is a federally regulated mortgage loan and subject to the federal Real Estate Procedures Act (RESPA) and its implementing regulation, Section X.

91.       Plaintiff sent a Qualified Written Request (QWR) to CMC on more than one occasion.

92.       Plaintiff's QWR contained information to enable CMC to identify Plaintiff's Loan and also contained requests for information on the loan, specifically the identify and contact information of the holder in due course of Plaintiff's Note, accumulated late  and charges and requested information to verify the validity of the purported debt owed to CMC for BankUnited, F.S.B. who had been taken over by the federal government and was in bankruptcy.

93.       In a further effort to verify and validate her debt, Plaintiff sent a Qualified Written Request to CMC in which she requested that CMC provide among other things, the identity of and standing of the current holder in due course and owner of her mortgage note. 12 U.S.C. §2605 (e) requires that the servicer provide this information and respond to a written request within 60 days of receipt.

94.       CMC replied to Plaintiff's QWR with a non-responsive answer and to date

CMC has not replied to Plaintiff's QWR.

95.    During the same period of time that CMC was only known to the Plaintiff as her mortgage loan servicer, CMC was subject to the requirements and provisions of BankUnited, F.S.B.'s Servicing Disclosure Agreement and Section 6 of RESPA (12 U.S.C. § 2005).

96.    Plaintiff sent to Defendant CMC numerous "qualified" written requests to CMC when it was her servicer information regarding the accounting on her account, the amortization on her account and information concerning the holder of her Note and Deed of Trust.

97.    The Defendant CMC failed to respond to her questions submitted to it concerning her accounting on her account, her disputes concerning her account and providing her with any information concerning the new Note Holder and "Lender" on her loan.  In fact CMC wrote Plaintiff a letter and told her it was actually none of her business and refused and failed to answer and resolve the dispute.

98.    Because Plaintiff's Treebranch Property Mortgage Loan is subject to RESPA appearing at 12 U.S.C. § 2605 Defendants violated Section 6 of Regulation X upon receipt of Plaintiffs qualified request by their actions including, but not limited to: (a) failure to make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written confirmation of the correction; and (b) failure to protect Plaintiff's credit rating upon receipt of Plaintiff's qualified written request by furnishing adverse information regarding payments to credit reporting agencies as defined in §603 of the Fair Credit Reporting Act, 15. U.S.C. § 1681 (a).

99.     Thus Defendant violated 12.U.S.C. § 2605 and are subject to statutory damages, civil liability, penalties, attorney fees and actual damages. See 12 U.S.C. § 2605. The actual pecuniary damages include, but are not limited to the over calculation and overpayment of interest on Plaintiff's loan, the costs of repairing Plaintiff's credit, the reduction and/or elimination of Plaintiff's credit limits costs associated with removing the cloud on her property title and attorney fees and costs, in an amount to be proven at trial, but in excess of $75,000.

100.    As a direct and proximate result of the violations of RESPA by Defendant, Plaintiff has suffered actual pecuniary damages, including but not limited to statutory damages, civil liability and attorney fees in an amount to be proven at trial.

101.    WHEREFORE, Plaintiff prays that this Court enter judgment in her favor and against CMC for:

a.      Actual damages of $245, 000 (Two Hundred and Forty Five Thousand Damages);

b.      Statutory Damages;

c.      Attorney fees, litigation expenses and costs of suit; and

d.      such other relief as this Court deems proper and just.

## FOURTH CAUSE OF ACTION

### (VIOLATION OF MARYLAND STAUTES AND REGULATIONS BY CONDUCTING MORTGAGE SERVICER ACTIVITY WITHOUT A MARYLAND  MORTGAGE SERVICER LICENSE)

### [Defendant CMC]

102.    Plaintiff  hereby incorporates by reference allegations plead in paragraphs 1 through 101,  as if fully plead herein.

103.    Central Mortgage Company (D/B/A Central Mortgage Company, INC) ("CMC") is a corporation duly formed in the State of Arkansas on April 4, 1997. In 2005 CMC only registered with the Maryland to do business in Maryland and nothing more.

104.    However, in Maryland, CMC was also required to register and obtain a special and separate license in Maryland to conduct business as a mortgage servicer or licensed mortgage broker pursuant to COMAR 09.03.06.03

105.    CMC was collecting mortgage payments on behalf of Debtors' lender Bank United, F.S.B. from 2006 until 2011, without a Maryland Mortgage Servicer license or Mortgage Broker license.

106.    CMC did not file or obtain a Maryland Mortgage Servicer license until July of 2011, at least five (5) years _after_ collecting mortgage payments from Plaintiff, and months after it had already engaged in foreclosure harassment, mailings, calls and threats against Plaintiff including but not limited to filing a foreclosure action against her.

107.    After finally applying for its Maryland mortgage servicer license in July 2011, CMC also submitted to Maryland's DLLR a copy of a May 2012, New Hampshire Consent Decree, that it had entered into with the State of New Hampshire admitting that it had also violated New Hampshire law by illegally collecting mortgage payments from 393 New Hampshire residents and consumers without a New Hampshire Mortgage Servicer or Mortgage Broker license.  CMC signed the New Hampshire Consent Decree on May 2, 2012.

108.    CMC has been an unregistered Mortgage Servicer or licensed Mortgage Broker in Maryland, New Hampshire and other States for more than five (5) years. In Maryland, CMC may have been licensed to do ordinary business in the state, however it

had failed and refused to register and obtain a license with Maryland DLLR to do business specifically as a mortgage servicer and/or mortgage broker, until July 2011 and only a <u>few months before</u> it filed its February 17, 2012 foreclosure action in court.

109.    CMC has illegally collected mortgage payments from Debtor McGinley for approximately $72,000.

110.    The Maryland Commissioner of Finance through Maryland DLLR is authorized to regulate mortgage servicers pursuant to Financial Institutions Article ("FI"), §11-501 *et seq* and COMAR 09.03.06.03.

111.    The Maryland Commissioner of Finance through Maryland DLLR is authorized to regulate mortgage brokers pursuant to COMAR 09.03.06.03.

112.    CMC conducted mortgage servicer's activity for at least hundreds of Maryland consumers illegally and without a valid Maryland Mortgage Servicer registration issued by the Maryland DLLR from 2005 to July 2011.  The mortgage payments, fees and other payments charged and collected by CMC from Plaintiff totaled approximately more than $72,000.

113.    CMC has already previously admitted in 2012 that it did not have and was not registered in Maryland as a licensed mortgage servicer and/or mortgage broker until on or about July 2011.

114.    Debtor demands reimbursement from CMC for all monies paid to it during the period in which it was illegal for it to collect mortgage payments, fees and costs from Plaintiff  and when it was also not registered to collect mortgage payments from any Maryland resident.

115.    As a direct and proximate result of the violations of  Maryland Statues and

Regulations by Defendant CMC, Plaintiff has suffered actual pecuniary damages, including but not limited to compensatory and statutory damages, civil liability and attorney fees in an amount to be proven at trial.

WHEREFORE, Plaintiff prays that this Court enter judgment in her favor and against CMC for:

a.    Actual damages of $72,000 (Seventy Two Thousand Dollars);

b.    Statutory Damages;

c.    Attorney fees, litigation expenses and costs of suit; and

d.    Such other relief as this Court deems proper and just.

### FIFTH CAUSE OF ACTION

### (VIOLATION OF FANNIE MAE AND FREDDIE MAC REQUIREMENTS TO ENGAGE IN LOSS MITIGATION PROCEEDINGS)

### [ Against Defendant PNC]

116.    Plaintiff hereby incorporates by reference the allegations set forth in paragraphs 1 through 8, as if fully plead herein

117.    Plaintiff's Virginia mortgage loan on her property located at 36 Thomas Court, Montross, Virginia 22520 is a Fannie Mae/Freddie Mac loan.

118.    Fannie Mae/Freddie Mac uses mandatory language and have clear mission statements that demand the mortgagee to pursue alternatives to foreclosure.

119.    PNC claims it is not both the servicer and note holder of Plaintiff's Virginia property identified in paragraph 117.

120.    Plaintiff made numerous attempts to engage in loss mitigation procedures with PNC but her efforts were futile.

121.    In June of 2012, PNC filed foreclosure action in the Circuit Court in

Virginia. Plaintiff filed a counterclaim against PNC.

122.   Since PNC now claims it is both the servicer and note holder it has failed and refused to engage in any loss mitigation efforts and did in fact violate both Fannie Mae and Freddie Mac's loss mitigation requirements. It has never engaged in any good faith loss mitigation efforts, including a face to face interview with the Plaintiff on her mortgage loan.

123.   Defendant PNC violated Fannie Mae and Freddie Mac's lost mitigation require and thus any foreclosure proceedings initiated by PNC are illegal and void.

124.   PNC's illegal actions has caused Plaintiff substantial damages, wherefore the Plaintiff pays that this court enter a judgment against PNC for compensatory, punitive and actual damages, plus attorney fees and cost due to this violation.

## SIXTH CAUSE OF ACTION-

## VIOLATION OF 12 U.S.C. §2605(RESPA)

## [As Against Defendant PNC]

125.   Plaintiff hereby incorporates by reference the allegations set forth in paragraphs 1-8 and 116-124, as if fully plead herein.

126.   PNC has failed to comply with its duties under 12 U.S.C. §2605(e) with respect to Plaintiff's "Qualified Written Request" (QWR). It has further failed to comply with respect to Plaintiff's subsequent QWRs from herself and her Virginia attorney.

127.   The Plaintiff's mortgage loan serviced and now allegedly owned by Defendant PNC as to her 36 Thomas Court, Montross, Virginia 22520 is a federally regulated mortgage loan subject to the federal Real Estate Procedures Act (RESPA) and its implementing regulation, Section X.

128.    Plaintiff sent a Qualified Written Request(QWR) to PNC seeking information concerning the accounting and the identity of the Note and Deed of Trust holder on her Virginia mortgage. However, PNC never sent a reply to any of Plaintiff's QWRs.

129.    Plaintiff's QWRs contained information to enable PNC to identify Plaintiff's Loan and also contained requests for accounting information as to the loan, to specifically identify and provide the name and contact information of the holder in due course of Plaintiff's Note, to account and explain the alleged accumulated late fees and charges and requested information to verify the validity of the purported debt owed by PNC on her mortgage.

130.    Because this PNC Mortgage Loan is subject to RESPA appearing at 12 U.S.C. § 2605, Defendant PNC violated Section 6 of Regulation X upon receipt of Plaintiff's QWR by its actions including, but not limited to: (a) failure to make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written confirmation of the correction; and (b) failure to protect Plaintiff's credit rating upon receipt of Plaintiff's qualified written request by furnishing adverse information regarding payments to credit reporting agencies as defined in §603 of the Fair Credit Reporting Act, 15. U.S.C. § 1681 (a).

131.    Thus Defendant PNC violated 12.U.S.C. § 2605 and is subject to statutory damages, civil liability, penalties, attorney fees and actual damages. See 12 U.S.C.§ 2605. The actual pecuniary damages include, but are not limited to the over calculation and overpayment of interest on Plaintiff's loan, the costs of repairing Plaintiff's credit,

the reduction and/or elimination of Plaintiff's credit limits costs associated with removing the cloud on her property title and attorney fees and costs, in an amount to be proven at trial, but in excess of $75,000.   12 U.S.C. § 2605 (f) entitles Plaintiff to damages for PNC's violations of this Statue.

132.     As a direct and proximate result of the violations of RESPA and Regulation by Defendant PNC,  Plaintiff has suffered actual pecuniary damages, including but not limited to statutory damages, civil liability and attorney fees in an amount to be proven at trial. 138.

WHEREFORE, Plaintiff prays that this Court enter judgment in her favor and against PNC for:

a.      Actual damages of $304,000 (Three Hundred and Four Thousand Damages);

b.      Statutory Damages;

c.      Attorney fees, litigation expenses and costs of suit; and

d.      such other relief as this Court deems proper and just.

Respectfully Submitted,

_____/s/_____
Jo Ann P. Myles
Law Offices of Jo Ann P. Myles
P.O. Box 6021
Suite 301
Largo, Maryland  20774
Bar No. 04412
301-773-9652 (office)
301-322-1704 (fax)

joamyl@aol.com