IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
<u>(Greenbelt Division)</u>

| | | |
|---|---|---|
| **In re:** | * | |
| **MONICA PATRICIA McGINLEY,** | * | **Case No.: 12-28809** |
| | | **(Chapter 13)** |
| Debtor. | * | |
| * * * * * * | * * * * * * * | |
| **MONICA McGINLEY,** | * | |
| Plaintiff, | * | |
| v. | * | **Adv. No.: 12-00745** |
| **CENTRAL MORTGAGE CO.,** *et al.*, | * | |
| Defendants. | * | |
| * * * * * * | * * * * * * * | |

**MEMORANDUM OF LAW IN SUPPORT OF PNC MORTGAGE'S
<u>MOTION TO DISMISS ADVERSARY PROCEEDING</u>**

PNC Mortgage, a division of PNC Bank, N.A.[1] ("PNC"), by counsel, submits this Memorandum in support of its motion to dismiss the Amended Complaint (the "Complaint") brought by Plaintiff in the above-captioned Adversary Proceeding.

**I.      INTRODUCTION**

This Adversary Proceeding arises out of two mortgage loans on Plaintiff's properties, one of which was originated and serviced by PNC. Plaintiff alleges first that PNC failed to follow federal loss mitigation guidelines. She then claims that PNC failed to respond to one or more qualified written requests (QWRs) under the Real Estate Settlement Procedures Act (RESPA).

---

[1]   The Complaint names as a defendant "PNC Mortgage Bank." No such entity exists. The correct entity is PNC Mortgage, a division of PNC Bank, N.A.

Both of Plaintiff's claims against PNC fail as a matter of law and should be dismissed for several reasons. Plaintiff's "loss mitigation" claims fail because she lacks standing to seek enforcement of loss mitigation guidelines. Plaintiff's QWR-related claims fail because (1) she fails to allege any actual violations; (2) RESPA does not cover requests relating to the identity of a noteholder; and (3) she fails to allege that she suffered any actual damages or that PNC engaged in a pattern or practice of noncompliance.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is the owner of two properties, one located at 8933 Treebranch Terrace, Germantown, MD 20874 (the "Maryland Property"), and the other located at 36 Thomas Court, Montross, VA 22250 (the "Virginia Property"). Compl. ¶¶ 2-3. PNC has no connection to the Maryland Property, which is allegedly owned or serviced by the other defendants in this action, Central Mortgage Co. and Deutsche Bank. Compl. ¶¶ 11-17.

On October 26, 2007, Plaintiff obtained a loan from National City Mortgage, secured by the Virginia property (the "Loan"). The Court may take judicial notice that PNC is the successor in interest to National City.[2]

---

[2]  At the time Plaintiff obtained her loan on the Virginia Property, National City Mortgage was a wholly owned subsidiary of National City Bank, N.A. In 2009 National City Bank, N.A. merged into PNC Bank, N.A. PNC became a successor by merger to National City. Attached hereto are excerpts from filings with the U.S. Securities and Exchange Commission (the "SEC") that are available on the internet through EDGAR, the SEC's public database, showing the merger of National City Mortgage Company into National City Bank (Exhibit A; http://www.sec.gov/Archives/edgar/data/1336311/000095015208007697/l34032ae8vk.htm), and the merger of National City Bank into PNC Bank, N.A. (Exhibit B; http://www.sec.gov/Archives/edgar/data/713676/000119312511051725/d10k.htm).

The Court may assume "matters properly subject to judicial notice." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002). This includes "matters of public record," *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

PNC currently services the Loan. Plaintiff alleges that she attempted unsuccessfully to engage in loss mitigation procedures with PNC at unspecified times. Compl. ¶ 120. She also alleges that in June, 2012, PNC filed a foreclosure action against the Virginia Property. Compl. ¶ 121. Plaintiff now claims that PNC violated Fannie Mae and Freddie Mac requirements for loss mitigation. Compl. ¶¶ 122-123. She also asserts that PNC violated RESPA by failing to respond to one or more of Plaintiff's qualified written requests. Compl. ¶¶ 126-130.

Plaintiff commenced a voluntary case under Chapter 13 of the Bankruptcy Code on October 17, 2012, and filed the instant adversary proceeding on October 31, 2012.

### III.    LEGAL STANDARD

A complaint requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. To survive a motion to dismiss under Rule 12(b)(6), "a complaint must state sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Where the allegations in the complaint do not permit the court to infer "more than the mere possibility of misconduct," the complaint does not show that the plaintiff may be entitled to relief. *Twombly*, 550 U.S. at 569. While a court deciding a motion to dismiss must treat all factual allegations as true, it need not accept legal conclusions couched as factual allegations. *Id.* Rather, the court must determine if the allegations in the complaint "plausibly give rise to an entitlement to relief." *Id.* The Supreme Court in *Twombly* concluded that such rigorous pleading standards are essential because, otherwise, the huge burdens and expenses that defendants face in

modern discovery can unduly pressure defendants to settle even "anemic cases." *Twombly*, 550 U.S. at 559.

## IV.     ARGUMENT

Only two of the counts in the Complaint are asserted against PNC: the Fifth Cause of Action, alleging violation of Fannie Mae and Freddie Mac requirements to engage in loss mitigation proceedings, and the Sixth Cause of Action, alleging violation of RESPA, 12 U.S.C. § 2605.  Both of these claims fail as a matter of law.

### A.     Plaintiff Lacks Standing to Sue for Violation of Fannie Mae and Freddie Mac Loss Mitigation Requirements.

Plaintiff alleges that the Loan is "a Fannie Mae/Freddie Mac loan" and that "Fannie Mae/Freddie Mac uses mandatory language and have clear mission statements that demand the mortgagee to pursue alternatives to foreclosure."  Compl. ¶¶ 117-118.  She claims in very general terms that she "made numerous attempts to engage in loss mitigation procedures with PNC," that PNC "has failed and refused to engage in any loss mitigation efforts and did in fact violate both Fannie Mae and Freddie Mac's loss mitigation requirements," and that PNC "has never engaged in any good faith loss mitigation efforts, including a face to face interview with the Plaintiff on her mortgage loan."[3]  Compl. ¶ 120, 122.

This claim fails because Plaintiff lacks standing to sue for alleged violations of mortgage servicing guidelines.  "[T]he weight of authority around the country roundly rejects the notion that either the NHA or associated HUD regulations support either direct or implied private causes of action for their violation."  *Wells Fargo Home Mortg., Inc. v. Neal*, 398 Md. 705, 715, 922 A.2d 538, 543-44 (2007).  This is so because "the regulations enacted pursuant to the NHA

---

[3]   PNC submits that those allegations are too vague insufficient as a matter of law to state any claim.  Since plaintiff lacks standing to assert a claim, however, the Court need not reach that issue.

were intended to govern the relationship between the mortgagee and the government rather than… the mortgagee and the mortgagor." *Id*., 398 Md. at 719, 922 A.2d at 546. "Thus, the regulations do not control directly the relationship between the mortgagor and mortgagee and may not be invoked by the mortgagor as a sword in an offensive cause of action against the mortgagee." *Id*. *See also Miller v. GE Capital Mortg. Servs., Inc. (In re Miller)*, 124 Fed. Appx. 152, 155 (4th Cir. 2005) (with regard to the NHA's loss mitigation requirements, "the statute's focus is on regulating mortgagees not protecting mortgagors… [I]t is evident Congress did not intend to imply a private cause of action in favor of the mortgagor"); *Shirk v. JPMorgan Chase Bank, N.A. (In re Shirk)*, 437 B.R. 592, 607 (Bankr. S.D. Ohio 2010) ("It is well-established that the NHA and attending regulations do not expressly or implicitly create a private right of action to mortgagors for a mortgagee's noncompliance with the Act or regulations… [T]he Shirks' allegation that they failed to receive the face-to-face meeting with Chase does not give rise to an entitlement to relief because the NHA and its related regulations do not provide an express or implied private right of action to enforce compliance with their provisions").

Plaintiff could raise the alleged regulatory noncompliance as a defense against a foreclosure action. *Neal*, 398 Md. at 721, 922 A.2d at 547. She cannot, however, sustain an offensive cause of action based on the alleged violations of the loss mitigation guidelines, and her Fifth Cause of Action must therefore be dismissed.

    **B.**    **Plaintiff Fails to State a Claim for Violation of RESPA.**

Plaintiff's Sixth Cause of Action alleges that "PNC has failed to comply with its duties under 12 U.S.C. §2605(e) with respect to Plaintiff's 'Qualified Written Request' (QWR). It has further failed to comply with respect to Plaintiff's subsequent QWRs from herself and her Virginia attorney." Compl. ¶ 126. As discussed below, Plaintiff's RESPA claim fails as a matter of law for at least three reasons: her claim is not pled with the requisite specificity;

RESPA does not cover her alleged request regarding ownership of the Note; and she fails to allege that she suffered any actual damage as a result of the alleged RESPA violations.

### (1) Plaintiff does not sufficiently allege that her requests satisfied the requirements for a Qualified Written Request.

Plaintiff does not attach any of the purported QWRs to her Complaint, and nowhere in the Complaint does she specify the dates of any QWRs or the details of their contents. Rather, she alleges generally that she requested "accounting information as to the loan" and asked PNC "to account and explain the alleged accumulated late fees and charges," and even more vaguely, "requested information to verify the validity of the purported debt owed by PNC on her mortgage." Compl. ¶ 129.

These allegations are insufficient to state a valid claim under RESPA. Under the statute, a qualified written request is defined as:

> [A] written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B). Plaintiff does not allege that her requests to PNC included any statements of the reasons for her belief that her account was in error, or provided any detail to PNC regarding the information she sought. Her vague statements that she sought "accounting information" and an explanation of "the alleged accumulated late fees and charges" are insufficient to allege that her requests satisfied the definition of a QWR. *See Eifling v. Nat'l City Mortg.*, No. CV10-5713 RBL, 2011 U.S. Dist. LEXIS 30517, at *6-*7 (W.D.Wash. Mar. 15, 2011) (request was not a QWR because it "did not contain specific reasons for concluding that their account was in error… It was instead a general notice of inquiry about the various fees and

charges, and a broad request for 22 categories of documentation"); *Boston v. Ocwen Loan Servicing LLC*, No. 3:12CV451, 2013 U.S. Dist. LEXIS 3376, at *13-*14 (W.D.N.C. Jan. 9, 2013) (where plaintiff alleged that mortgage servicer "deliberately failed to properly and timely respond to two (2) requests by [plaintiff's] qualified written requests for information about, and corrections to her mortgage account, in violation of 12 U.S.C. §2605(e)," her allegations were "too threadbare to state a claim for a violation of Section 2605, as Plaintiff wholly fail[ed] to allege facts showing that her request for information constituted a 'qualified written request' as required to trigger a lender's obligation to respond under Section 2605"); *Taggart v. Norwest Mortg., Inc.*, No. 09-1281, 2010 U.S. Dist. LEXIS 2263, at *13 (E.D.Pa. Jan. 12, 2010) (complaint does not qualify as a QWR because it "does not provide sufficient detail to the servicer about how the plaintiff's account is in error and what information the plaintiff is seeking, as required under § 2605(e)(1)(B)(ii)"); *Griffin v. Am. Home Mortg. Servicing (In re Griffin)*, Adv. Proc. No. 10-08361-rdd, 2010 Bankr. LEXIS 3555, at *10-*11 (Bankr. S.D.N.Y. Aug. 31, 2010) (request was not a QWR because it "did not state the reasons for the borrowers' belief that the account was in error or provide in sufficient detail to the servicer, the rationale for the other information sought and how it relates to the servicing of the loan, as such term is defined in Section 2605(i)").

As one court cautioned, "The RESPA and the QWR regulation was not designed, and should not be used, as a vehicle to permit in default borrowers to flood their lender with documentation requests, on the hope that a failure to timely comply will lead to an affirmative cause of action, or a defense to a collection or foreclosure action." *Eifling*, 2011 U.S. Dist. LEXIS 30517, at *7. Even if Plaintiff did send letters to PNC regarding her loan, she has failed

to allege facts indicating that those letters were QWRs for purposes of a RESPA claim. This claim fails the *Twombly/Iqbal* pleading standard and must therefore be dismissed.

### (2) RESPA does not cover requests regarding the holder of a Note.

To the extent that Plaintiff's RESPA claim is based on her allegation that she requested that PNC "specifically identify and provide the name and contact information of the holder in due course of Plaintiff's Note," that claim fails as a matter of law, because this type of request is not covered by RESPA. Under the plain terms of the statute, a QWR relates only to "information relating to the servicing" of the particular loan about which the request is made. 12 U.S.C. § 2605(e)(1)(A). The statute defines "servicing" as relating to "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan… and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3).

Requests that do not relate to the "servicing" of a particular loan, including requests regarding the ownership of a Note, are not QWRs under the statute, and courts have specifically rejected RESPA claims based on alleged failures to provide information regarding the validity of mortgage loans. In one case, the court held that a request seeking copies of loan documents, assignments of the deed of trust and promissory note, and other documents related to the loan's history was properly read as "a communication challenging the validity of the loan and not a communication relating to the servicing of the loan as defined by statute," and therefore did not qualify as a QWR. *Ward v. Sec. Atl. Mortg. Elec. Registration Sys., Inc.*, 858 F. Supp. 2d 561, 574 (E.D.N.C. 2012). Another court, considering a RESPA claim by a plaintiff whose request sought, *inter alia*, "a true and present copy of the promissory note and deed of trust," "a complete life of loan transactional history," and "the name, address, name of a contact person

and telephone number of the current holder in due course and owner of the mortgage note," held that this is "not the type of information RESPA contemplates… [T]he requests as a whole seeks information on the validity of the loan and mortgage documents.  Such requests do not fall within the confines of RESPA."  *Junod v. Dream House Mortg. Co.*, No. CV 11-7035-ODW, 2012 U.S. Dist. LEXIS 3865, at *11 (C.D.Cal. Jan. 5, 2012).  *See also Ginn v. CitiMortgage, Inc. (In re Ginn)*, 465 B.R. 84, 95 (Bankr. D.S.C. 2012) (failure to respond to plaintiff's request for proof that CitiMortgage was the holder of the Note, was outside the scope of RESPA, because the request for a mortgage securitization document "does not fall within the meaning of 'servicing'"); *Luther v. Wells Fargo Bank*, No. 4:11cv00057, 2012 U.S. Dist. LEXIS 142538, at *20-*22 (W.D.Va. Aug. 6, 2012) (requests are not covered by RESPA where they "challenge the validity of the loan and do not seek a communication relating to the servicing of the loan as defined by the statute").

Plaintiff therefore cannot assert a claim under RESPA based on PNC's alleged failure to provide her with information regarding the holder in due course of her Note.  Such information does not relate to the servicing of the loan, and is therefore outside the scope of section 2605 of RESPA.

        **(3)    Plaintiff fails to allege that she suffered any actual damages or that PNC engaged in a pattern or practice of noncompliance.**

Finally, Plaintiff fails to allege that she suffered any actual damage as a result of the alleged RESPA violations, or any causal link between the alleged violations and any damages.  Plaintiff merely states that she has suffered damages that include "statutory damages, civil liability and attorney fees."  Compl. ¶ 132.  Nowhere does she identify any economic injury or other actual damages that she supposedly suffered as a result of PNC's alleged failure to respond to her inquiries.

RESPA provides an independent cause of action only to individuals who either (1) suffer "any actual damages to the borrower as a result of the failure" or (2) establish a "pattern or practice of noncompliance with the requirements" of RESPA. 12 U.S.C. § 2605(f)(1). *See Ward*, 858 F. Supp. 2d at 575 (plaintiffs fail to state a claim under 12 U.S.C. § 2605(e) where they "fail to allege any pecuniary loss attributable to the RESPA violation"); *Boston*, 2013 U.S. Dist. LEXIS 3376, at *7 (plaintiffs must allege that the RESPA violation resulted in actual damages); *Griffin*, 2010 Bankr. LEXIS 3555, at *10 ("the courts have consistently dismissed complaints under RESPA if they do not allege actual damages or state merely that in a conclusory fashion the defendant caused damages to the plaintiff"); *Nix v. Tavernier* (In re Nix), Adv. Pro. No. 11-80062-HB, 2012 Bankr. LEXIS 13, at *38-*39 (Bankr. D.S.C. Jan. 5, 2012) ("Plaintiff's mere recitation of damages without any supporting facts as to how she was damaged is insufficient to establish a claim for violation of RESPA"); *Radisi v. HSBC Bank USA, N.A.*, No. 5:11CV125-RLV, 2012 U.S. Dist. LEXIS 81605, at *14 (W.D.N.C. June 13, 2012) (same).

Plaintiff's claim against PNC is devoid of any allegations regarding actual damages she sustained as a result of the purported RESPA violation, and she does not allege that PNC engaged in a "pattern or practice of noncompliance."[4] She therefore cannot recover from PNC under RESPA, and her claim must be dismissed.

---

[4] The phrase "pattern or practice" under RESPA "suggests a standard or routine way of operating." *Cortez v. Keystone Bank, Inc.*, No. 98-2457, 2000 U.S. Dist. LEXIS 5705, at *32 n.12 (E.D. Pa. May 2, 2000). "A failure to provide subsequent responses to each of a series of repetitive inquiries from a borrower… does not constitute a pattern or practice." *Id*. *See also Maxwell v. Fairbanks Capital Corp.*, 281 B.R. 101, 123 (Bankr. D. Mass. 2002) (two failures to respond did not constitute "pattern or practice"); *In re Thompson*, 350 B.R. 842, 852 (Bankr. E.D. Wisc. 2006) (five failures to respond did not constitute "pattern or practice").

## V. CONCLUSION

For all of the foregoing reasons, Plaintiff's Amended Complaint should be dismissed as to PNC. A proposed Order is submitted herewith for the Court's consideration.

January 30, 2013                            Respectfully submitted,

/s/ Constantinos G. Panagopoulos
Constantinos G. Panagopoulos (Bar No. 11961)
BALLARD SPAHR LLP
1909 K Street NW, 12th Floor
Washington, DC 20006-1157
Telephone: (202) 661-2200
Facsimile: (202) 661-2299
cgp@ballardspahr.com

Hillary G. Benson (Bar No. 17254)
BALLARD SPAHR LLP
4800 Montgomery Lane, 7th Floor
Bethesda, MD 20814-3401
Telephone: (301) 664-6200
Facsimile: (301) 664-6299
bensonh@ballardspahr.com

*Attorneys for Defendant PNC Mortgage, a division of PNC Bank, N.A.*