Date signed April 11, 2013



IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at GREENBELT

| In Re: | |
|---|---|
| Monica P. McGinley | Case No.      12-28809-TJC |
| Debtor | Chapter        13 |
| Monica P. McGinley<br><br>Plaintiff<br>vs.<br><br>Central Mortgage Company, D/B/A Central Mortgage Loan Servicing Company, *et al.*<br><br>Defendants | Adversary No.    12-00745 |

**MEMORANDUM OF DECISION**

Plaintiff Monica P. McGinley brings this complaint against defendant PNC Mortgage, a division of PNC Bank, N.A. ("PNC"), as well as against defendants Deutsche Bank National Trust Company, as trustee, and Central Mortgage Company. With respect to PNC, plaintiff asserts claims under the Real Estate Settlement Procedures Act ("RESPA"), and seeks both to enjoin foreclosure actions and recover money damages due to PNC's alleged failure to follow

loss mitigation requirements.  PNC has filed a motion to dismiss the complaint, which plaintiff opposes, and the Court held a hearing on the motion on April 8, 2013.  For the reasons stated below, the Court will dismiss the complaint without prejudice, except that (1) plaintiff's claim for monetary relief for the alleged failure to follow loss mitigation requirements is dismissed with prejudice; and (2) plaintiff's claim that the July 2011 Letter or the the June 2012 Letter, as defined herein, constitutes a qualified written request under RESPA is dismissed with prejudice.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§1334, 157(a) and Local Rule 402 of the United States District Court of the District of Maryland.

### Facts as Alleged in the Complaint Against PNC

Plaintiff filed for relief under chapter 13 on October 17, 2013, initiating case number 12-28809.  She brought this adversary proceeding shortly thereafter.  On November 29, 2012, she filed an amended complaint ("Complaint") that is the subject of PNC's motion to dismiss.

Plaintiff owns real property located at 36 Thomas Court, Montross, Virginia, 22250. This property is subject to a note and deed of trust that is allegedly held by PNC.  Complaint, ¶117.  In June of 2012, PNC filed a foreclosure action on the Virginia Property.  *Id*., ¶121.  It has refused to engage in any loss mitigation efforts and has violated Fannie Mae and Freddie Mac's loss mitigation requirements.  *Id*., ¶122.  Plaintiff sent PNC requests seeking information concerning the accounting and identity of the noteholder and for accounting information on the loan.  *Id*., ¶128.  PNC has not replied to these requests.

### Conclusions of Law

The motion is brought under Fed. R. Civ. P. 12(b)(6), which applies in adversary proceedings pursuant to Fed. R. Bankr. P. 7012(b).  "[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim,

or the applicability of defenses." *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks and alterations omitted). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States,* 120 F.3d 472, 474 (4th Cir. 1997). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level…on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal citations omitted). Thus, the plaintiff's obligation is to set forth sufficiently the "grounds of his entitlement to relief," offering more than "labels and conclusions." *Id.* (internal quotation and alterations omitted); *see also Young v. City of Mount Ranier,* 238 F.3d 567, 577 (4th Cir. 2001) ("the presence [in a complaint] of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support" the necessary legal finding).

The Supreme Court summarized the *Twombly* standard in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009):

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Id*. at 677 (quoting *Twombly*) (internal citations and brackets omitted). As further guidance, the Supreme Court noted that the plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

The Court will now turn to the specific counts in the Complaint asserted against PNC.

*Counts 5 – Violation of Loss Mitigation Requirements.*

In Count 5, plaintiff contends PNC initiated foreclosure proceedings without first engaging in loss mitigation procedures purportedly imposed on it by regulations of the Housing and Urban Development and as required by Fannie Mae and Freddie Mac servicing guidelines. She seeks "substantial" compensatory, actual and punitive damages against PNC and asks that the Court enjoin PNC from pursuing the foreclosure action.

The parties dispute whether the HUD regulations apply to the loan and the scope and extent of the Fannie Mae and Freddie Mac loss mitigation requirements. The Court need not address these issues. To the extent Count 5 seeks monetary relief, it fails under established precedent.

In *Wells Fargo Home Mortgage v. Neal*, 922 A.2d 538 (Md. 2007), a case on which defendant heavily relies but which plaintiff does not address, the Court of Appeals of Maryland considered whether a homeowner had a private cause of action for breach of contract or was entitled to declaratory or injunctive relief against his lender, who failed to follow federal loss mitigation requirements as provided for in his deed of trust. *Id*. at 541. The homeowner obtained a stay of foreclosure proceedings pre-sale by bringing an action for failing to observe various pre-foreclosure loss mitigation procedures contained in the mortgage servicing regulations. *Id.* at 542. The court recognized that authority around the country rejected the notion that the federal requirements "support either direct or implied private causes of action for

4

their violation" where the regulations "were intended to govern the relationship between the mortgagee and the government rather than . . . the mortgagee and the mortgagor." *Id.* at 543–44, 546. The court noted that, while there is "ample support that aggrieved mortgagors may assert an allegation of regulatory noncompliance as a shield against unauthorized foreclosure actions," the regulations for the rules and procedures for the program "do not control directly the relationship between the mortgagor and the mortgagee and may not be invoked by the mortgagor as a sword in an offensive cause of action against the mortgagee." *Id.* at 546, 547.

Similarly, in *Mathews v. PHH Mortgage*, 724 S.E.2d 196 (Va. 2012), borrowers with an FHA loan sought declaratory relief that a pending foreclosure sale would be void based on the mortgagee's failure to carry out a face-to-face interview required by HUD regulations and contained in the deed of trust prior to initiating a foreclosure. *Id.* at 198. As pertinent here, the court held that a borrower's failure to pay under a note did not preclude them from bringing an action "whether for damages *after the fact* of the improper sale or to bar the improper sale in equity before it occurs." *Id.* at 199 (emphasis added). Specifically, the court stated that "equitable relief is available to enjoin the improper sale before it occurs" and "damages may be awarded at law after a foreclosure sale has been conducted improperly because the power of foreclosure has not accrued." *Id.* at 199 n. 1.

Here, the Complaint alleges that PNC initiated a foreclosure proceeding on the Virginia property, but no sale occurred and the action was stayed by the bankruptcy filing. Under *Neal* and *Mathews*, plaintiff may seek to enjoin a sale based on the alleged failure to follow loss mitigation procedures, but she may not seek pre-sale monetary relief based on such allegations. Accordingly, the Court will dismiss Count 5 with prejudice to the extent it seeks monetary relief for the alleged failure to follow loss mitigation procedures.

Finally, to the extent the plaintiff seeks here an order enjoining the foreclosure sale, the Court would abstain from hearing that claim. The automatic stay bars any foreclosure action from proceeding, and so the need for an injunction of any pending action is currently moot. Moreover, this claim arises within well established state court procedures for addressing such challenges to foreclosure sales, including procedures for seeking equitable relief prior to the sale. A claim that a foreclosure sale should be enjoined because of a failure to follow loss mitigation procedures should ordinarily be addressed by the courts that will be called upon to resolve any other challenges to the foreclosure process through the usual procedural mechanisms. *See* 28 U.S.C. 1334(c)(1)(2006) (Nothing in §1334 prevents the court, "in the interest of justice, or in the interest of comity with the State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."). *See also In re Railworks Corp.*, 345 B.R. 529, 540 n.6 (Bankr. D. Md. 2006) (setting forth list of factors to consider for discretionary abstention).

*Count 6 – Violations of RESPA.*

Section 2605 of RESPA sets forth certain requirements applicable to a "Qualified Written Request" ("QWR"). In general, a QWR is a written correspondence that sufficiently identifies the name and account of the borrower and "includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. §2605(e)(1)(B). Within sixty days after the receipt of a QWR, the servicer is required to make appropriate corrections to the account and provide an explanation of the corrections, if applicable, or to provide a written explanation to the borrower of the reasons the account is correct or why the requested information is not available, as well as contact information for a person who can

provide assistance to the borrower.  *Id.* at §2605(e)(2)(A),(B),(C).  RESPA provides damages for violations of these provisions, including costs and attorneys' fees.  *Id.* at §2605(f).  Regulations have been promulgated that supplement the provisions of RESPA.  *See* 24 C.F.R. §3500.21.

In Count 6, plaintiff contends that PNC violated §2605(e) by failing to respond to QWRs within sixty days.  In its motion to dismiss, PNC argues that the allegations describing the QWRs lack sufficient specificity to determine that plaintiff has stated a plausible claim under RESPA.  The Court agrees that the RESPA allegations in the Complaint consist primarily of statements that plaintiff sent "qualified written requests" to PNC.  The Complaint fails to describe the date of the request, or more significantly, the specific information sought in the request.  It cannot be determined from the face of the Complaint whether the correspondence states a claim under 12 U.S.C. §2605(e)(1)(B).  As such the Complaint essentially asserts the legal conclusion that the written correspondence sent by plaintiff constitutes a "qualified written request" under RESPA.

In response to the contention that the Complaint lacks specificity of the description of the QWRs, plaintiff submitted with her opposition brief two letters sent to PNC.  She invites the Court to review them to determine if they qualify as QWRs.  Although the Court considers the letters in resolving the motion, it will not convert the motion to one under Rule 56.  First, since the letters were submitted by plaintiff, not defendant, the concern of lack of notice to the plaintiff that the documents will be considered does not arise.  *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.").  Further, a court may consider on a Rule 12(b)(6) motion documents that are integral to the complaint and authentic.  *Fisher v. Md. Dep't of Pub. Safety & Corr. Servs.*, Civil Action No.: JFM–10–CV–

0206, 2010 WL 2732334, at *2 (D.Md. July 8, 2010) (to be considered integral "an attached document must 'be central or integral to the claim in the sense that its very existence, and not the mere information it contains, gives rise to the legal rights asserted.'") (emphasis added) (quoting *Walker v. S.W.I.F.T. SCRL*, 517 F.Supp.2d 801, 806 (E.D.VA. 2007)). The letters, which plaintiff alleges are QWRs, are integral to the complaint, and there is no dispute that they are authentic.

The first letter is signed by plaintiff and dated July 25, 2011, and entitled "Proof of Claim" (the "July 2011 Letter"). Ex. 34-1. Plaintiff states that she was writing to "confirm that [PNC is] still the rightful holder in due course of my promissory note . . . ." Id. She "demand[s]" that proof be provided that PNC Bank is the "rightful holder in due course and a real party in interest." *Id*. She asks for the original wet ink signature promissory note and an account and general ledger statement showing the full accounting of the obligation and sought an affidavit stipulating that PNC Bank follows generally accepted accounting principles.

By letter dated August 3, 2011, PNC responded to the July Letter (the "PNC Response"). Ex. 34-2. The PNC Response states that PNC disputes that the July 2011 Letter qualified as a QWR, and therefore, PNC "objects to your purported QWR." *Id*. PNC further states that a QWR "must outline a specific dispute or discrepancy related to loan servicing and request investigation by the servicer or mortgagor." *Id*. However, PNC states that:

> Without waiving the objection, I am authorized to enclose the following documents: Origination Note, Origination Mortgage, Good Faith Estimate, HUD1 Settlement Statement, the Trust-In-Lending Disclosure, the Payment History, and Payment History Transaction Codes that will assist you in your review.

*Id*.

The July 2011 Letter is not a QWR under RESPA for several reasons. The July 2011 Letter asks PNC for proof that it is the "holder in due course." Several cases hold that a request to verify the "holder" of a note is outside the scope of information required by RESPA to constitute a QWR. *Kelly v. Fairon & Associate*, 842 F.Supp.2d 1157, 1160 (D. Minn. 2012) ("Requests for information pertaining to the identity of a note holder or master servicer do not relate to servicing."); *DeVary v. Countrywide Home Loans, Inc.*, 701 F.Supp.2d 1096, 1108 (D.Minn. 2010) (noting that requests that do not regard the servicing of the loan are not covered by RESPA); *Obot v. Wells Fargo Bank, N.A.*, No. C11–00566, 2011 WL 5243773, at *2 (N.D.Cal. Nov. 2, 2011) ("a QWR must request information relating to the servicing of a loan."). *But see Stephenson v. Chase Home Fin. LLC*, No. 10cv2639–L, 2011 WL 2006117, at *3–4 (S.D.Cal. May 23, 2011); *Woods v. Greenpoint Mortg. Funding, Inc.*, No. 2:09–1810, 2010 WL 1729711, at *7 (E.D.Cal. Apr. 28, 2010). However, the July 2011 Letter goes well beyond asking if PNC is the "holder." A "holder in due course" status is a determination made after taking into account the physical characteristic of the instrument and whether the holder took for value, in good faith and without notice.[1] It is a legal conclusion to be made after considering the

---

[1] Md Code Ann. Com. Law ("CL") §3-302 (2002) provides:

> Subject to subsection (c) and § 3-106 (d), "holder in due course" means the holder of an instrument if: (1) The instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity; and (2) The holder took the instrument (i) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (iv) without notice that the instrument contains an unauthorized signature or has been altered, (v) without notice of any claim to the instrument described in § 3-306, and (vi) without notice that any party has a defense or claim in recoupment described in § 3-305 (a).

Under the Maryland Commercial Code, the "holder" of an instrument includes "the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." CL §1-201(21).

facts and circumstances of the transaction. Nothing in RESPA requires a servicer or mortgagor to make an assessment and verify it is a holder in due course, and plaintiff has cited no authority to the contrary. Similarly, RESPA does not require a servicer to submit an affidavit that it follows generally accepted accounting principles, which has nothing to do with servicing a loan.

Plaintiff also submits a letter dated June 12, 2012 (the "June 2012 Letter"), from her counsel to PNC. It states that he is serving notice that PNC is in breach of provisions of the deed of trust for failure to give proper notice and opportunity to cure prior to accelerating the debt. Ex. 34-4. It also states that plaintiff never received a prior default letter and, even if she had, it was not timely sent under the deed of trust. *Id*. The June 2012 Letter also states that McGinley has claims for statutory damages under the Fair Debt Collection Practices Act. The letter concludes by proposing that the foreclosure sale should be cancelled and requests that PNC consider a modification of the loan. *Id*.

The June 2012 Letter is not a QWR. It does not ask for information at all; it merely asserts claims against PNC and proposes a resolution of those claims.

Several days before the hearing on the motion to dismiss the plaintiff filed a motion to amend the Complaint. The proposed amended complaint appears to add considerable detail to the allegations that various letters sent to PNC constitute QWRs. Accordingly, the Court will dismiss Count 6 without prejudice, subject to resolution of the motion to amend the Complaint, except that Count 6 is dismissed with prejudice to the extent it asserts that the July 2011 Letter or the June 2012 Letter is a "qualified written request" under RESPA.

## Conclusion

For the foregoing reasons, the Court will dismiss Count 5 without prejudice, except that plaintiff's claim for monetary relief for the alleged failure to follow loss mitigation requirements

is dismissed with prejudice.  Count 6 is dismissed without prejudice, except that plaintiff's claim that the July 2011 Letter or the June 2012 Letter constitutes a qualified written requests under RESPA is dismissed with prejudice.

cc:     Plaintiff
        Plaintiff's Counsel
        Defendants
        Defendants' Counsel
        Chapter 13 Trustee
        United States Trustee

End of Memorandum