**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION**

_____

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **Case No. 12-28809-TJC** |
| **MONICA PATRICIA McGINLEY,** | ) | |
| | ) | **Chapter 13** |
| Debtor(s). | ) | |
| _____ | ) | |
| | ) | |
| **Plaintiff(s)** | ) | |
| **MONICA PATRICIA McGINLEY** | ) | |
| | ) | |
| **vs.** | ) | **Adversary No. 12-00745** |
| | ) | |
| **Defendant(s)** | ) | **PLAINTIFF'S MEMORANDUM** |
| **DEUTSCHE BANK NATIONAL** | ) | **OPPOSITION TO DEFENDANT PNC** |
| **TRUST COMPANY AS TRUSTEE** | ) | **MORTGAGE'S MOTION TO** |
| **FOR HARBORVIEW 2006-BU1 ET. AL.** | ) | **DISMISS** |
| | ) | |
| _____ | ) | |

**PLAINTIFF'S AMENDED OPPOSITION TO DEFENDANT
PNC'S MOTION TO DISMISS**

Plaintiff Monica Patricia McGinley, by and through her undersigned Counsel, hereby

submits this amended memorandum in support of her opposition to Defendant PNC Mortgage, a

division of PNC Bank, N. A.'s (hereinafter referred to as "PNC") motion and memorandum in

support of their motion to dismiss, and in support thereof, she states the following:

**I.      STATEMENT OF THE CASE**

On or about April 4, 2013, Plaintiff McGinley filed a Second Amended Complaint (SAC)

and demanded a jury trial against Defendant PNC seeking relief, damages, and other equitable and

legal remedies in connection with PNC's attempts to collect money and foreclose upon as-yet

unproduced promissory note and mortgage that were purportedly issued by McGinley to the

Defendant PNC or its alleged predecessors-in-interest.   As a response to McGinley's Second

Amended Complaint PNC filed on June 24, 2013, a motion to dismiss the SAC pursuant to Fed. R. Civ. P. 12(b) (6), under the guise that McGinley's SAC allegedly "…fails to state a claim upon which relief can be granted."

In its memorandum of law in support of its motion to dismiss, PNC admits that McGinley in her SAC filed the following four claims against it: (1) violation of HUD's regulations to engage in loss mitigation, (2) violation of 12 U.S.C. § 2605, Real Estate Procedures Act (RESPA), (3) violation of 15 U.S.C. § 1692, Fair Debt Collection Practices Act (FDCPA), and (4) violation of 15 U.S.C. § 1681, Fair Credit Reporting Act (FCRA).

PNC asserts in its memorandum that all of McGinley's four (4) claims must fail against it because allegedly she has not supported her claims by "specific factual allegations establishing the elements of any viable cause of action. Instead of PNC pointing to specific allegations or proving and citing accurate law, it is PNC's Counsel who alleges through only conclusory statements and argument that allegedly Plaintiffs claims must fail. However, argument of Counsel is not evidence or proof that Plaintiff's claims must fail. Nonetheless, Plaintiff counters by asserting that the legal pleading standard in this matter does not require for her to write a book about her claims against PNC. Since PNC failed and refused to point to or articulate which paragraphs (allegations) in McGinley's SAC allegedly does not pass muster. Plaintiff will not play a guessing game but respond based on PNC's arguments without details from PNC. Clearly PNC has failed to meet its burden of proof and persuasion by failing to assert, argue or support its motion to dismiss with only its Counsel's arguments and conclusory statements.

Lastly, McGinley has sufficiently asserted and plead sufficient facts to support all of her claims as required by law. PNC's arguments that McGinley's claims must fail because she allegedly has pleaded insufficient facts and that as a servicer it is not a debt collector and thus not subject to FDCPA, as well as other allegations are all in dispute. Plaintiff further argues that PNC

2

in 2009 told her that it had purchased her loan at a time after it believed she was in default and thus under FDCPA it was a debt collector and subject to the provisions under the FDCPA. Therefore, the Bankruptcy Court should deny PNC's Motion To Dismiss in its entirety as it has no merit, as Plaintiff sufficiently plead her claims as to: the Defendant PNC's violations of not engaging in loss mitigation and its violations of the RESPA, FDCPA and FCRA laws.

## II.    BACKGROUND

The dispute in this matter between Plaintiff and Defendant PNC arose sometime in 2009 as to her Virginia property known as 36 Thomas Court, Montross, Virginia 22250, located in Westmoreland County Virginia.

In or about 2007, Plaintiff was advised by a broker for her then lender National City that her Thomas Court Virginia property was valued over $400,000 and that she could refinance the property and pull some of the equity out of the property. SAC ¶133  Based on the representations of National City Mortgage, in 2007, Plaintiff refinanced her Thomas Court property. SAC ¶133 However, in 2009, National City Mortgage went under and Plaintiff contacted PNC by writing a Qualified Written Request (QWR) who was then her mortgage loan servicer to ascertain who was her new mortgage lender. SAC ¶135 Plaintiff would not make any more mortgage payments to PNC until she was provided with this information.  SAC ¶¶134-235   Finally, PNC contacted Plaintiff in writing and advised her in 2009 that it was not only her mortgage loan servicer but now her new mortgage lender and to continue to make her mortgage payments to PNC, which she believed and continued to do.

However, in 2011, Plaintiff's property was appraised by the State of Virginia and it was determined that the market value of Plaintiff's Thomas Court property had dropped by 50% and was worth no more than $200,000. Plaintiff's property was underwater. In 2011, Plaintiff contacted PNC about modifying her mortgage loan. SAC ¶136   Plaintiff's mortgage was current.

3

After Plaintiff contacted PNC about modifying her 36 Thomas Court, Montross, Virginia property, PNC in the summer of 2011 told Plaintiff that she could not have her mortgage obligation reduced more than one percent and possibly to only approximately 5.5% only if she would declare a hardship and miss payments and then maybe she could get a rate as low as 2%. SAC ¶137

In July 2011, Plaintiff began to search the Westmoreland County Virginia land records to determine if PNC was her lawful lender and note holder, as PNC had informed Plaintiff in 2009 that it had bought National City Bank and it was the owner of all of its assets including her mortgage loan for Thomas Court. SAC ¶135      However, after making a search of the Westmoreland Land records in 2011, Plaintiff saw that there were no land records showing that there had ever been any assignment, transfer or sale of her mortgage from National City Mortgage to PNC. SAC ¶138

Plaintiffs mortgage history shows that from 2009 until 2013 (the present) she has sent numerous (more than six) "Qualified Written Requests" (QWR) to PNC requesting an accounting and disputing the accuracy of her payments and the servicing of her mortgage loan as well as raising questions among other things the ownership of her mortgage note.  See Exhibit 1, April 26, QWR Plaintiff believes then and now that neither PNC nor Fannie Mae has standing to make claims against her that they are the holder of her mortgage note. SAC ¶166  However, PNC during the period from 2009 to the present failed to respond and/or sent nonresponsive responses to Plaintiff's QWRs. SAC ¶¶ 133-168

Frustrated, bewildered and baffled with PNC's inadequate and/or lack of response and actions, Plaintiff on October 19, 2011, filed in the Westmoreland County land records a public notice that PNC was in default and breach of the parties' agreement and by failing to respond with proof that PNC held her promissory note and it was the owner of her promissory note. On October

4

21, 2011 and November 22, 2011, Plaintiff sent second and third letters by certified mail to the CEO of PNC demanding that PNC cease and desist in its demand for payments from her and its collection actions until it responded to her QWRs. SAC ¶142-143    Plaintiff also sent in November 22, 2011, a letter to PNC's CEO of which he did not respond to. SAC ¶144

Additionally, PNC never sent Plaintiff an acceleration notice pursuant to paragraph 22 of Plaintiff's Deed of Trust (DOT) for her Thomas Court property. SAC ¶145    On December 22, 2011, and February 10, 2012, Plaintiff again wrote QWRs to PNC's CEO but her attempt to get PNC's attention and to respond to her prior QWRs was futile. SAC ¶146    Plaintiff did not hear again from PNC until March 29, 2012, when she received a letter dated March 24, 2012, that still did not respond to her questions and inquiries in her previous QWRs. SAC ¶146    On or about April 1, 2012, Plaintiff received a letter dated March 26, 2012, from PNC which informs Plaintiff that her loan has been referred to PNC's attorney. SAC ¶147-148

On May 10, 2012, Plaintiff McGinley sent certified letters to the Law Firm of Shapiro Brown and Alt disputing PNC's alleged debt and the alleged default. SAC ¶153    Simultaneously on that same date Plaintiff also sent two more detailed QWRs, one to PNC and one to the Law Firm Shapiro Brown and Alt demanding additional and detailed information about the serving and accounting on her note, who owned her loan and the assignment, transfer and sale of her loan. SAC ¶156    Questionable was a letter Plaintiff received on May 21, 2012, dated May 15, 2012, from PNC that states "Thank you for your recent inquiry concerning your mortgage loan." The letter also states that "We expect to contact you in writing with the results by May 30, 2012. SAC ¶154    Meanwhile Plaintiff has still not received any response she was supposed to have received on May 19, 2012, a self-imposed deadline set by PNC. SAC ¶155    Since May of 2012, Plaintiff has continued to send PNC QWRs concerning her account and its accounting and errors and has not received a response or adequate response, thus PNC has continued to engage in a pattern and

5

practice of violating the laws. SAC ¶¶132-168    Lastly, on or about June 2012, PNC notified Plaintiff that it no longer owned Plaintiff's mortgage but that Fannie Mae owned her mortgage note. However, Plaintiff continues to question and dispute both PNC's and Fannie Mae's standing as to whether or not it they are the true parties of interest of her mortgage note and thus Plaintiff hereby moves this court for discovery to prove or disprove their standing to collect any mortgage payments from her as to her Virginia property. SAC ¶162.

### III.    LEGAL STANDARD OF REVIEW

The general rule of law as to the standard of review of a motion to dismiss is that a complaint should not be dismissed unless it appears beyond <u>any</u> doubt that the Plaintiff cannot prove any set of facts that would entitle her to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) and *Faulkner Advertising Assoc. v. Nissan Motor Corp.,* 905 F.2d 769, 771-72 (4th Cir. 1990). Additionally, for the purposes of ruling and resolving the defendant's motion to dismiss, this Court must accept the allegations in Plaintiff McGinley's complaint to be true and must liberally construe the allegations in the complaint as a whole. *Jenkins v. Mckeithen*, 395 U.S. 441, 421 (1969) and *Finlator v. Powers*, 902 F.2d 1158 (4th Cir. 1990).

The reason for a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint, not to resolve conflicts of fact or to decide the merits of the action. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999) In considering a motion to dismiss, the court assumes the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) However, the SAC's …[f]actual allegations must be enough to raise a right to relief above the speculative level' and have 'enough facts to state a claim to relief that is plausible on its face.' " *Wahi v. Charleston Area Med. Ctr., Inc*., 562 F.3d 599, 616 n. 26 (4th Cir.2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ). "[A] plaintiff's

obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and
conclusions, and a formulaic recitation of a cause of action's elements will not do. *Twombly*,
550 U.S. at 555 (citations omitted)"

The standard for evaluating sufficiency of the SAC in the instant case is particularly
flexible.  Dismissal of McGinley's SAC in this matter allegedly for failure to state a claim does
not require the appearance, beyond a doubt, but that the plaintiff can prove "no set of facts" in
support of any of her claims that would entitle her to relief. *Bell Atl. Corp. v. Twombly*, 550
U.S. 544, 127 S. Ct. 1955, 1968, 167 L.Ed.2d 929 (2007) (abrogating *Conley v. Gibson*, 355
U.S. 41-46, 78 S. Ct. 99, 2 L. Ed.2d 80 (1957)).

In order for McGinley's SAC to survive  PNC's 12(b)(6) motion, it must state a claim
for relief that is" plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950,
173 L.Ed.2d 868 (2009).  In *Ashcroft*, any claim for relief is facially plausible when the
plaintiff pleads enough facts, taken as true, to allow a court to draw a reasonable inference that
the defendant like PNC is liable for the alleged conduct. Id. at 1949.  In this Court determining
whether the SAC states a plausible claim for relief "… will be a context-specific task requiring
the court to draw on its judicial experience and common sense. Id."

Generally a court cannot consider materials outside the pleadings on a motion to
dismiss for failure to state a claim. See Fed. R. Civ. P. 12(b).  A court may, however, consider
items under the incorporation by reference doctrine, courts may also consider documents
"whose contents are alleged in a complaint and whose authenticity no party questions, but
which are not physically attached to the [plaintiff's] pleading." *In re Silicon Graphics Inc.
Sec. Litig*., 13 F.3d 970, 986 (9th Cir. 1999) ( quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th
Cir. 1994)) (alteration in the original).

Rule 12(b)(6) also provides that "[i]f . . . matters outside the pleadings are presented to

and not excluded by the court, the motion [to dismiss] shall be treated as one for summary

judgment and disposed of as provided in Rule 56." Fed. R. Civ. P. 12(b)(6) (emphasis added).

At this point Plaintiff has no notice by this court that it is going to treat defendant's motion as

one for summary judgment.

###### IV.       ARGUMENT

#### A.       PLAINTIFF MCGINLEY HAS STATED A VIABLE CLAIM AGAINST PNC FOR ITS VIOLATION OF LOSS MITIGATION REQUIREMENTS. PLAINTIFF SEEKS INJUNCTIVE RELIEF.

Defendant  PNC in its motion to dismiss does not deny that Plaintiff McGinley has a

viable claim against it for failure to engage in lost mitigation procedures but only to the extent

that she is not seeking monetary relief.  Plaintiff McGinley does not seek monetary relief from

PNC at this time as to this claim, only injunctive relief against PNC. She seeks to have this

Court enter an Order requiring PNC to engage in loss mitigation pursuant to the Housing and

Urban Development (HUD) and Fannie Mae regulations assuming that Fannie Mae it standing,

it is the true party in interest and/or is actually the note holder and/or lender.

It should be noted that at the time Plaintiff filed her Second Amended Complaint on

April 4, 2013, this Court had not ruled on the Defendants' motions to dismiss, thus Plaintiff

was without any knowledge or benefit of the Court's ruling on April 12, 2013. Plaintiff clearly

could not have incorporated nor made changes to her SAC based on the Court's April 12,

2013, ruling as it had not been written.

This Court ruled on April 12, 2013, in a Memorandum and Opinion as to why

Plaintiff's Loss Mitigation and RESPA claims failed. Defendant PNC's incorrectly attacks

Plaintiff for any alleged deficiencies in her Second Amended Complaint when, again at the

time she filed her Second Amended Complaint this Court had yet to rule. Now that the Court

has ruled, she moves this Court for leave to amend her complaint to more specifically specify and clarify that it is not her objective at this juncture to enjoin the foreclosure sale in Virginia but to have PNC and Fannie Mae, if they are in fact the true parties in interest to engage in loss mitigation proceedings are mandated by Housing Urban Development (HUD).

Obviously had Plaintiff had the benefit of the Court's April 12, 2013, prior to her submission of her proposed Second Amended Complaint on April 4, 2013, she would have incorporated certain changes in her Seconded Amended Complaint and those changes would have excluded any request for pre-sale monetary damages as oppose to injunctive relief to enjoin the Defendant from continuing to deny Plaintiff's request to engage in loss mitigation procedures.

As this Court is aware and still pending before this Court is Plaintiff's open motion for loss mitigation. Plaintiff filed her motion for loss mitigation simultaneously with her bankruptcy case, while as a pro se litigant. Thus this Court can take judicial notice of the record that it has always been Plaintiff's intention and request to engage in loss mitigation with her true creditors and parties of interest, to include the real creditors and/or parties of interest as to her Virginia property.

To insure that the record is clear, Plaintiff at this time is not seeking any pre-sale monetary relief (to the extent the court of PNC is referring to an injunction as to the foreclosure sale pending in the Virginia Court), but injunctive relief to compel both PNC and Fannie Mae if they are the true parties in interest to abide by the HUD and Fannie Mae regulations and to engage in loss mitigation procedures/proceedings with her.

Wherefore for the above stated reasons, PNC's motion to dismiss the Plaintiff's loss mitigation claim should be denied. Plaintiff moves this Court for leave to amend her SAC to show that she is seeking injunctive relief to enjoin the Defendants PNC and Fannie Mae from

continuing to fail and refuse from engaging in loss mitigation with her, an act that the Office of the Comptroller of the United States found that PNC improperly failed to engaged in from 2008-2010 with consumers. SAC ¶¶167-168

## B.    Plaintiff Has Sufficiently Plead A RESPA Claim.

RESPA requires a mortgage loan servicer to timely respond to requests for information by a borrower. 12 U.S.C. § 2605(e)  RESPA applies to borrowers in bankruptcy. *In re Payne*, 387 B.R. 614 (Bankr. D. Kan. 2008).

Contrary to the argument of PNC in its Motion To Dismiss Plaintiff has sufficiently pleaded a RESPA Claim. ¶¶132-168, 180-187

### 1.    Plaintiff's sufficiently allege facts that Support her Qualified Written Requests.

Plaintiff has alleged that PNC violated RESPA for a number of reasons including but not limited to the following reasons: failing to respond to Plaintiffs QWRS, failing to promptly respond to her QWRS for information, failing to correct wrong information and failing to give her not8ice of the transfer, assignment, sale or the name of the holder of her mortgage note.

PNC argues that the Plaintiff's RESPA claim should be dismissed because she allegedly: failed to attach any QWRs.  However, Plaintiff alleges that she is not required to attach any QWRs to her SAC. Defendant has cited no law that supports this contention, because it knows the law only requires Plaintiff to factually plead her details about her QWRS. *Ashcroft v. Iqbal*  and  See SAC ¶¶ 1-14, 132-168, 180-187 and 225-240.

Furthermore, Plaintiff has attached as Exhibit one (1), her April 26, 2012, QWR to the defendant PNC, as to which it failed to respond and/or adequately respond to the Plaintiff. Although the Plaintiff is asking the Court to review the one QWR it does not require the Court after its review to treat the Defendant PNC's motion to dismiss as one for summary judgment.

The Court can review Plaintiff's QWR exhibit because she in her complaint factually alleged allegations that "expressly link" the QWR to her allegations in the SAC. *Beddall v. State St. Bank & Trust, Co.*, 137 F.3d 12, 16-17 (1ˢᵗ Cir., 1998)

Plaintiff's SAC states detailed factual allegations. She has made sufficient and substantive allegations pursuant to her RESPA claim. SAC ¶¶ 1-14, 132-168 and 229-240 Moreover, she has shown that she made reasonably stated written requests for her mortgage account information, which constituted qualified written requests. SAC ¶¶132-168 and Exhibit 1 Some courts have even held that the consumer does not even have to provide a reason for writing their QWR as long as the QWR has sufficient detail and Plaintiff has provided sufficient details as to her QWRs " 12 U.S.C.  2605(e)(1)(A),(e) (2)  and (e)(2) and (e)(3); see also *Garcia v. Wachovia Mortgage Corp.*, 676 F. Supp.2d 895, 909 (C.D. Cal. 2009) (when construed in light most favorable to borrower, letter was a qualified written request even though it did not contain a statement of reasons for borrower's belief of error; letter provided sufficient detail regarding "other information" being sought*); Rawlings v. Dovenmuehle Mortgage, Inc.*, 64 F. Supp.2d 1156, 1162 (M.D. Ala. 1999)"

>    **2.    Plaintiff  Has Alleged That She Suffered Actual Damages And That PNC Engaged in A Pattern or Practice of Noncompliance.**

Contrary to PNC's allegations in its motion on pages 7-8, Plaintiff has sufficiently alleged that she suffered damages in her SAC. Plaintiff alleged damages in her complaint against PNC for violation under RESPA. SAC ¶¶187 and 229-240  Specifically, Plaintiff alleges in her SAC that the actions of the defendants PNC and Fannie Mae caused her to suffer economic damages. She makes her first allegation about suffering damages at the hands of both defendants in the very first paragraph of her SAC.

COMES  NOW PLAINTIFF MONICA PATRICIA MCGINLEY who

alleges damages and seeks  relief against the Defendants, and each of them
as follows:

Everything that follows that first allegation is the alleged facts and requests for damages. See

SAC ¶¶1-14, 132-168, 180-187

Plaintiff further alleges damages against Defendant PNC in her Second Amended

Complaint at paragraph 187 and she specifically alleges and requests actual damages in the

amount of $304,000. The damages demand is as follows in Plaintiff's Second Amended

Complaint.

> 187.    As a direct and proximate result of the violations of
> RESPA and Regulation by Defendant PNC, Plaintiff
> has suffered actual pecuniary damages, including but
> not limited to statutory damages, civil liability and
> attorney fees in an amount to be proven at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court enter judgment in
her favor and against Defendants  PNC and Fannie Mae for:
    a.   Actual damages of $304,000 (Three Hundred and Four Thousand
Damages)  or as determined by a jury;
    b.   Statutory Damages;
    c,   Punitive damages to be determined by a jury;
    d.   Attorney fees, litigation expenses and costs of suit; and
    e.   Such other relief as this Court deems proper and just.

The general rule of law is that a Court does not "require any magical words" to be

plead in a complaint in order for the Complaint to meet the requirement of being sufficient to

put a party on notice of the claims against it and the damages being requested. *Catalan v.*

*GMAC Mortg. Corp.*, 629 F.3d 676 (7th Cir. 2011)

This Court should look at the four corners of the Complaint in its totality and properly

and liberally infer that Plaintiff has factually pleaded allegations under RESPA. SAC¶¶132-

168 Other courts have held that the Court can infer damages and a debtor need not expressly

set forth such actual damages in the Complaint. *Catalan v. GMAC Mortg. Corp*., 629 F.3d 676 (7th Cir. 2011)

However in the case at bar, Plaintiff McGinley not only alleged that the Defendant PNC's breach caused her damages she cited the actual damages. ¶¶ 249-*259  In re Lacey v. Home Loan Servicing, et. al*., 480 B.R. 13, at 50 (Bankr. D. Mass 2013)  "(holding that damages from a failure to respond to the QWRR can be inferred and a debtor need not expressly set forth such damages in a complaint)"  Other Courts have held that if the Plaintiff has alleged that Defendant like PNC has engaged in a pattern or practice of noncompliance, which Plaintiff has done , they do not have to allege "specific or actual damages.  *In re Thompson*, 350 B.R. 842, 852 (Bankr. E.D. Wisc. 2006)  (contrary to PNC's argument*,  In re Thompson* supports the fact that the failure to respond to five (5) QWRs constitutes a pattern and practice violation pursuant to RESPA) and SAC ¶¶ 132-168

Additionally, Plaintiff has alleged facts that if believed substantiates and makes it plausible that PNC engaged in a pattern and/or practice of noncompliance (pattern of RESPA violations)  and in the alternative if the Court believes that Plaintiff failed to allege specific damages, again, other courts have held that a Plaintiff alleging that a defendant engaged in a "pattern and/or practice of noncompliance of RESPA  does not have to allege "actual damages." *In re Thompson*   Plaintiff  McGinley has alleged facts supporting her claim of actual damages as well her allegation that PNC engaged in a "pattern and/or practice of noncompliance under RESPA, thus making meeting any requirement that she allege that she suffered any actual damages. RESPA. SAC ¶¶132-168

More importantly, Plaintiff must only allege that she suffered actual damages "flowing from the RESPA violation or a pattern and practice of PNC's violation of the RESPA statue. *Frazile v. EMC Mortg. Corp*., 382 Fed. Appx, 883, 836 (11th Cir. 2010) and 12 U.S.C.§

2605(f)(1). In this matter Plaintiff McGinley has alleged that due to PNC's failure to correct her payment and accounting errors that her credit score/or credit worthiness has diminished and she has experienced humiliation, embarrassment, and reduced and/or limited ability to access credit. SAC ¶¶ 249-259 Thus, Plaintiff McGinley has alleged conduct by PNC that has caused her tangible and actual economic harm. SAC ¶249-259

Since Plaintiff was only required to allege actual damages "flowing from the violation or a pattern or practice by PNC of noncompliance under RESPA, she has met her burden on both fronts and the Defendant PNC's motion to dismiss Plaintiff's RESPA claim should be dismissed.

Thus, PNC's allegation that Plaintiff allegedly did not allege or request damages is not only false it is without merit and in the alternative Plaintiff has sufficiently alleged a "pattern and practice claim against PNC and is not required to plead "actual damages." SAC¶187 Thus, for all the above reasons, PNC's motion to dismiss Plaintiff's RESPA claims should be denied.

### 3. Plaintiff's Claims against PNC included allegations that PNC had a Pattern and Practice of Engaging in Noncompliant Behavior.

Contrary to Defendant PNC's allegation on page 8 of its Motion To Dismiss on, Plaintiff did in fact allege that PNC had a pattern and practice of noncompliance and specifically noncompliance as to its servicing requirements, which included properly responding to a customers QWRs. See ¶167  Specifically, Plaintiff alleges in her Paragraph 167 (page 37) of her SAC under her section titled:

### FACTUAL ALLEGATIOINS COMMON TO

### [Defendants PNC AND FANNIE MAE]

the following:

> 167.    Defendant PNC has a history and pattern and practice of failing to properly service mortgage loans.  It has recently been learned by Plaintiff, that PNC had entered on April 20, 2011, into a Consent Order with the federal government's Office of the Comptroller (OOC) for failure to properly service consumer mortgage notes.

Thus, PNC's allegation that Plaintiff McGinley did not allege that PNC engaged in a "pattern and practice of noncompliance" is wrong.  As to whether PNC's numerous failures  to not respond to Plaintiff's QWRs equates to a violation of  RESPA is a factual issue and can only be decided by the Jury and/or tier of fact. Although, Plaintiff is alleging that PNC failed to respond or adequately respond to more than five (5) QWRs that she has sent it.  Also PNC's case of *In re Thompson*, 350 B.R. 842, 852 (Bankr. E.D. Wisc. 2006) does not help PNC.   *In re Thompson* supports Plaintiffs' contention that repeated failures (failure to respond to five QWRS)  to respond to QWRs <u>does</u> constitute a "pattern and practice of noncompliance. *In re Thomspon* cites  " *Ploog v. HomeSide Lending, Inc*., 209 F. Supp.2d 863, 869 (N.D. Ill 202) (failure to o respond to five qualified written requests constituted "pattern or practice")."

Furthermore, Plaintiff has made out her claim under RESPA against PNC because Plaintiff has pled a viable claim under RESPA based on PNC's alleged failure to timely respond to her April 1st letter.[5] Moreover, Plaintiff  McGinley has alleged facts making it plausible that PNC violated 12 U.S.C. § 2605(e)(3) by providing negative information to a credit agency during the 60–day period following receipt of her QWRs.

**C.    PLAINTIFF HAS PLEADED A VIABLE CLAIM UNDER THE FDCPA.**

Plaintiff's claim that PNC violated the FDCPA should not be dismissed because PNC now claims it was allegedly only a "mortgage" servicer" as that claim and alleged fact is disputed by the parties. SAC ¶135   Although, PNC was Plaintiff's servicer in sometime in prior to 2009, its role, status and position in 2009 has been disputed. In 2009 Plaintiff alleged that her original lender National City Mortgage Company went belly up. Plaintiff stopped and/or refused to make mortgage payments and sent a QWR to then PNC her mortgage servicer demanding among other things who was her lender and mortgage note holder. SAC ¶¶ 134-135   In 2009, PNC wrote a letter to Plaintiff and alleged at the time she was in default or perceived that she was in default and that PNC was her new lender.  SAC¶135   Plaintiff then accepted PNC's misrepresentations as true that it was her new lender and Plaintiff proceeded to continue to pay her mortgage loan. But at the time PNC claimed that it owned Plaintiffs' mortgage note and was her new lender, Plaintiff's mortgage account was in default because she did not want to pay a mortgage payment to PNC on behalf of a defaulted Mortgage Company. Inasmuch that PNC bought Plaintiff's mortgage at the time it was in default while it was her servicer, it became a "debt collector" under the FDCPA because it acquired Plaintiff's mortgage note at a time that she was in default. Plaintiff after learning and believing that PNC was her new lender, then subsequently learned through her own personal investigations that PNC's claim that in 2009 that it was her new lender and had purchased her mortgage note did not correspond  with here investigatory findings.

According, to the allegations made by McGinley in her SAC, sometime in 2009 she was perceived by PNC that she was in default because she did not know who to pay in 2009 and she had not paid it, when she sent a QWR to PNC who was then her servicer. SAC ¶135   PNC told Plaintiff it had acquired her mortgage loan, to continue to pay PNC, which meant that when PNC purchased McGinley's loan it was in default or it had been perceived by PNC to have been in default and  thus it was a "debt collector" pursuant to the law. SAC¶135   It is the default status

16

and/or perceived default status of McGinley's loan that determines if PNC was a debt collector or simply a loan servicer at the time it told McGinley it had purchased her mortgage loan. *Yarney v. Ocwen Loan Servicing, LLC*, No. 12-cv-0014, 2013 WL 880077, at 5 (W.D. Va. Mar. 8, 2013)

However, as time went by Plaintiff continued to challenge and question PNC on its lender status in order for her to pay her mortgage payment. SAC¶¶164,166 McGinley demanded proof in 2009 before she would make payments. Once PNC said it had acquired her mortgage Plaintiff made payments. SAC ¶¶134-135 However, PNC had clearly perceived that McGinley had defaulted and/or was going to continue to default when she wrote her QWR in 2009 demanding proof as to who was her new lender because she knew that National City Mortgage had gone belly up.

For almost three (3) years or more Plaintiff believed that PNC fro 2009 until on or about July of 2012 was her mortgage lender as well as mortgage servicer. It was not until sometime in 2012, Plaintiff alleges that PNC sent her a letter advising her that Fannie Mae was the lender and investor of her mortgage loan.

Presently, the parties dispute that PNC was only a servicer between 2009 and July 2012. Plaintiff has alleged that at all times relevant PNC was actually a "debt collector". PNC did not originate McGinley's mortgage loan on her Virginia property but clearly it made attempts to collect on McGinley 's debt because Plaintiff had either allegedly defaulted or PNC was under the belief she had defaulted. *Bridge v. Ocwen Federal Bank, FSB,* 681 F.3d 355, 359 (6th Cir.2012) What is clear is that PNC treated Plaintiff as if she had defaulted. *Bridge v. Ocwen Federal Bank, FSB,* 681 F.3d 355, 359 (6th Cir. 2012)

Whether or not PNC was a loan servicer or a "debt collector" is in dispute for the relevant time period in Plaintiff's complaint. In the alternative, if PNC is claiming that at the time it purchased McGinley's mortgage she was not in default, then it certainly can be implied that PNC

thought Plaintiff was in default based on the allegations in the SAC.  PNC cannot have it both ways. PNC cannot claim it is only a loan servicer when McGinley in her SAC has alleged that when she hesitated paying on her loan in 2009 because she was unsure of the status of National City Mortgage Company (Plaintiff's then original lender), in order to get Plaintiff to resume or continue to make payments to PNC, PNC told Plaintiff it was the new lender and had bought her loan. SAC¶ ¶134-135

The Fourth Circuit has established that "the threshold requirement for application of the [FDCPA] is that prohibited practices are used in an attempt to collect a debt."  *Mabe v. G.C. Servs. Ltd. P'ship*, 32 F.3d 86, 87-88 (4th Cir. 1994) The FDCPA prohibits the use of "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. "The false representation of the character, amount, or legal status of any debt" is specifically prohibited by the statute. 15 U.S.C. § 1692e(2)(A). The FDCPA is a strict liability statute, meaning that a consumer need only prove one violation in order to establish liability. 15 U.S.C. § 1692k (a); *Spencer v. Hendersen–Webb, Inc.,* 81 F.Supp.2d 582, 590–91 (D.Md.1999).  If PNC was actually a servicer and pretended to have purchased Plaintiff's debt and it had not purchased Plaintiff's mortgage the it still violated the FDCPA. See  15 U.S.C. Section 1692e and 15 U.S.C. Section 1692e(2)(A).

Thus taken as true, Plaintiff's allegations adequately state a claim for relief under the FDCPA.  ¶¶ 132-168 and 229-240  PNC represented in 2009 through 2012 that it was Plaintiff's mortgage lender at a time she was either in default or certainly when PNC perceived Plaintiff to be in default of her mortgage loan.  Plaintiff believed PNC when it told her it had purchased her loan, thus PNC as a mortgage servicer at the bare minimum purchased Plaintiff's mortgage at a time it at least perceived her to be in default of her mortgage, thus PNC was a debt collector pursuant to FDCPA.  See SAC ¶135

As to the Defendant's eagerness to urge this Court to take judicial notice of the EDGAR and SEC's public database, which it claims allegedly support its claim that "N.A. merged into PNC into PNC Bank, N.A. and that there was a merger of National City Mortgage Company into National City Bank", Plaintiff stronger contests the substance and contents of the EDGAR and SEC databases. Plaintiff has strongly objected that PNC and Fannie Mae may not have standing and be the true parties of interest to her mortgage note and they may not specifically be the holder of her "note". Plaintiff alleges that the EDGAR and SEC databases cited by PNC maybe corrupt and the substantive information and contents inaccurate, as the information may have been supplied by PNC, National City Mortgage Company or National City Bank, whom all have a motive to have provided skewed or dishonest information to the EDGAR and SEC website.

Specifically, Plaintiff McGinley has repeatedly alleged that PNC and Fannie Mae are not the holders, owners of her mortgage note or her actual lenders to include but not limited to paragraphs ¶¶ 137-139, 141-142, 144, 153, 162, 164-165. Moreover, Plaintiff challenges the substance and content of the information on and in the EDGAR and SEC Website and in particular as to information provided to by National City Mortgage, PNC, Fannie Mae and or any entities or individuals that are employees or agents of defendants PNC and Fannie Mae.

More importantly, this court has held in similar cases, that it is wholly inappropriate for this Court to take judicial notice of the substantive content through a website as to information, which the parties dispute and/or are being disputed by the parties and without first giving Plaintiff McGinley the opportunity for factual discovery. *Ademiluyi v. Pennymac Mortgae Investment Trust Holdings I. LLC, et. al*., 336 F. Supp. 2d. 492 (Md. 2013)  and "*See* Fed.R.Evid. 201 (indicating that a judicially noticed fact must not be subject to reasonable dispute); *e.g., It's My Party, Inc. v. Live Nation, Inc.,* Civ. No. JFM–09–547, 2012 WL 78795,

19

at (D.Md. Jan. 10, 2012) ("While the fact of the filings and proceedings is capable of accurate determination by resort to the public record, the truth of the contents of the exhibits is open to reasonable dispute.")."   Plaintiff disputes the contents of  any database information from EDGAR and the SEC may have concerning, relating and/or pertaining to Defendants PNC and Fannie Mae.

Wherefore Plaintiff McGinley has sufficiently plead and offered sufficient factual allegations that PNC was a "debt collector" within the meaning of the FDCPA.

### D.    PLAINTIFF STATES A VIABLE CLAIM FOR VIOLATION OF FCRA AGAINST PNC

Defendant PNC admits that Plaintiff filed a claim against it for Violation of the Fair Credit Reporting Act (FCRA). See SAC ¶¶249-259   It inaccurately states the federal code in which Plaintiff filed her claim. Plaintiff filed her FCRA claim against PNC pursuant to 15 U.S.C. Section 1681s-2 but she also specifically filed her FCRA claim pursuant to 15 U.S.C. Section 168s-1(b).

Plaintiff McGinley did not  file a claim against PNC pursuant to 15 U.S.C. Section 1681s-2(a).  Plaintiff McGinley could and did properly filed a claim against PNC pursuant to 15 U.S.C. Section 1681s-2(b).  Several Circuits including the Fourth Circuit Court of Appeals has ruled and held that borrowers do have a private cause of action against furnishers of credit information like PNC under the FCRA. PNC is not immune from all liability. While Congress eliminated a private cause of action for companies like PNC to furnish accurate and complete information, furnishers like PNC may be held liable for failing to conduct a reasonable investigation of the consumer's dispute after the furnisher (PNC) receives notice of the dispute from a consumer reporting agency.  16 C.F.R 660.4(e)(1) (FTC); 222.43(e)(1)(FRB);

334.43(e)(1)(FDIC).

While furnishers (PNC) may be immune from private claims under 1681s2-a, consumers have a private cause of action under 15 U.S.C. 1681s-2(b), which is what Plaintiff filed her claim under. *Saunders v. Branch Banking & Trust Co. of Virginia*, 526 F.3d 142 (4th Cir. 2008); *Green v. RBS National Bank, 288Fed Appx.*, 641 (11th Cir. 2008) and *Yelder v. Credit Bureau of Montgomery*, 131 F. Supp. 2d 1275 (MD. Al. 2001).

Wherefore for all of the above stated reasons this Court should not dismiss Plaintiff's FCRA claim against PNC as she has plead a viable claim against PNC pursuant to 15 U.S.C. Section 16812-2(b).

## III.    CONCLUSION

For the reasons stated, Plaintiff Monica Patricia McGinley respectfully asks this Honorable Court to deny Defendant PNC Mortgage, a division of PNC Bank, National Association's motion to dismiss and to grant any additional orders or relief to Plaintiff as it sees proper and just under the circumstances.

Respectfully submitted,

_____/s/__Jo Ann P. Myles _____
Jo Ann P. Myles, Esquire (Bar No. 04412)
Law Offices of Jo Ann P. Myles
Post Office Box 6021
Largo, MD  20792
Telephone: (301) 773-9652
Facsimile: (240) 334-4848
joamyl@aol.com

Attorney for Plaintiff/Debtor

21

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of  August 2013, a copy of the foregoing Plaintiff

Monica McGinley's Memorandum Opposition to Defendant PNC Mortgage, a division of PNC

Bank, N. A.'s Motion To Dismiss and exhibits was served to those recipients authorized to

receive a Notice of Electronic Filing by the Court, and/or by first class mail, postage prepaid

to:

Constantinos G. Pangagopoulos, Esquire
Hillary G. Benson, Esquire
Ballard Spahr LLP
1909 K Street N.W., 12th Floor
Washington, D.C. 20006-1157
Attorneys for Defendant PNC Mortgage, a division of PNC Bank, N.A.

William M. Savage, Esquire
Shapiro, Brown & Alt, LLP
10021 Balls Ford Road Suite 200
Manassas, Virginia 20109
Counsel for CMC and Deutsche Bank

Bizhari Beiramee, Esquire
Beiramee & Cohen, P.C.
7508 Wisconsin Avenue
Second Floor
Bethesda, Maryland 20854
Counsel for CMC and Deutsche Bank

Mary Beth Mclean, Esq.
4201 Mitchellville Road
Suite 401
P.O. Box 958
Bowie, Maryland 20718
Counsel for Nancy Spencer Grigsby
Chapter 13 Trustee

_____/s/_____Jo Ann P.Myles
Jo Ann P. Myles